IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FELICIA ANDERSON,                    )
                                     )
          Plaintiff,                 )          Civil Action No.
                                     )
     vs.                             )          _____
                                     )
CITY OF ATLANTA,                     )
OFFICER JEFFREY A. BRANUM,           )
in his individual capacity,          )
                                     )
          Defendants.                )

## **VERIFIED COMPLAINT**

COMES NOW Felicia Anderson, the Plaintiff, and brings this Complaint

seeking damages for the violations of her First and Fourth Amendment rights

under the United States Constitution, corollary rights under the Georgia

Constitution as well as state law claims arising primarily from an incident when

Anderson peaceably monitored and photographed police activity but officers in

turn approached and arrested Anderson, seized her camera, and damaged, deleted

and/or altered images.

## JURISDICTION AND VENUE

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(3), the First, Fourth, and Fourteenth Amendments of the United States Constitution, and pendent jurisdiction pursuant to 28 U.S.C. § 1367 under Article I, § 1, ¶¶ V, XIII of the Georgia Constitution. The actions of defendants were under color of law. Venue is proper in this Court.

## PARTIES

2.

Plaintiff currently resides in New York State. At all times during the incident that is the subject of this complaint, Plaintiff resided at 1614 Westwood Avenue, Atlanta, Georgia, 30310.

3.

Defendant City of Atlanta, Georgia is a body corporate and politic and a political subdivision of the State of Georgia, duly established under its laws and Constitution. The Atlanta Police Department ("APD") is a division of the City of Atlanta and the public employer of Officer Branum, a defendant named in this complaint. At the time of this incident, Defendant City of Atlanta had a policy or

practice encouraging officers to seize cameras of citizens monitoring police activity.

4.

Defendant Jeffrey Branum is an officer with the Atlanta Police Department. He is sued in his individual capacity.  Defendant Branum was acting under the color of state law at all times during the incident that is the subject of this complaint.

**FACTUAL ALLEGATIONS**

5.

On October 14, 2009, several officers from the Atlanta Police Department ("APD"), including officers from the APD's now-disbanded RED DOG unit, raided a house at 1620 Westwood Avenue, Atlanta, Georgia, 30310.

6.

Plaintiff was then inside her home at 1614 Westwood Avenue and went outside when she heard people shouting and yelling.  She saw several police vehicles parked on the street including a van with the word "Narcotics" written on the side of it.  She also observed officers with a battering ram in front of 1614 Westwood Avenue.  All of the officers present were wearing official uniforms,

3

some of whom also had badges clearly visible.  Several of Ms. Anderson's

neighbors had also come outside in response to the police activity.

7.

Plaintiff crossed the street from her home and continued to observe the

police investigation unfold.  As Ms. Anderson crossed the street she saw several

police officers repeatedly kick a male civilian while he was lying on the ground,

handcuffed.  Several of Ms. Anderson's neighbors also witnessed this brutal

assault.

8.

Ms. Anderson returned to her home and came back outside with her camera.

She witnessed the same officers whom she had previously seen assaulting and

kicking the male civilian on the ground.  Ms. Anderson began to document the

situation with her camera while standing on a public sidewalk at the opposite side

of the street from where the assault was taking place.  At this point, the officers

were dragging the subject on the ground but stopped when they saw Ms. Anderson.

9.

While engaged in this constitutionally protected free speech activity, several

of the officers who were participating in the assault shouted at Ms. Anderson and

demanded that she stop photographing them.  The officers gave no reasons for their demands and threatened Ms. Anderson with arrest if she did not stop.

10.

With Plaintiff still standing on the sidewalk, Officer Branum approached Plaintiff and demanded that Plaintiff give him her cell phone.  Plaintiff refused and responded that the officer had no authority to take her cell phone from her.  Officer Branum again commanded Plaintiff to give him her cell phone.  Plaintiff still refused.  Officer Branum then forcibly grabbed Plaintiff's cell phone from her hand.

11.

Plaintiff started to walk back to her home while still on the public sidewalk. Officer Branum followed Plaintiff.  Ms. Anderson became flustered and she dropped her camera on the ground, at which time Officer Branum seized it from Ms. Anderson.

12.

Officer Branum ordered Ms. Anderson off the sidewalk and into the middle of the street.  He demanded Ms. Anderson's identification, and she produced it, providing Branum with an official identification card issued by the State of Michigan, her prior state of residence.  Demanding Ms. Anderson's identification

by force of his authority constituted a search for which Defendant Branum had

neither probable cause nor exigent circumstances.  Taking Ms. Anderson's

identification, in these circumstances, constituted a seizure of Ms. Anderson as no

reasonable person would have felt free to leave before her identification had to her.

13.

Ms. Anderson asked for her camera back but Officer Branum refused.

Branum and another APD officer then began to visibly manipulate Ms. Anderson's

camera.  Branum boasted to Ms. Anderson that he had deleted the close-up photos

that she had taken, leaving the ones where, in Branum's words, "you can't see

shit."  Several of Ms. Anderson's neighbors witnessed Branum delete the photos

from Ms. Anderson's camera.

14.

Officer Branum stated to Ms. Anderson that he "didn't like her attitude" and

that he would "take her on a trip downtown."  Officer Branum declared to Ms.

Anderson, "I run this shit" and "this isn't the ACLU."  He and other APD officers

continued to hurl obscenities at Ms. Anderson.

15.

Officer Branum then handcuffed Plaintiff, placed her under arrest.  Officer

Branum cited Plaintiff for the following offenses:  (a) no driver's license, under

O.C.G.A. § 40-5-20; (b) pedestrian walking in roadway, under O.C.G.A. § 40-6-96; and (c) disorderly conduct, under section 106-81.7 of Atlanta's Code of Ordinances.

16.

At no time during the incident at issue was Ms. Anderson driving a motor vehicle as that term is defined under Georgia statutory law.  In fact, Ms. Anderson did not know how to drive; she owned a motorized scooter.

17.

At no time during the incident at issue did Ms. Anderson physically obstruct Defendant Branum or any other APD officer in their "lawful occupation" under the disorderly conduct ordinance at issue.  Moreover, there is nothing "lawful" about officers physically assaulting and battering a restrained individual under color of law.

18.

At all times during the incident at issue, Ms. Anderson exercised her constitutional right to peaceably observe and record police activity while situated on a public sidewalk at a distance from the officers.  The first time she entered a roadway or street was when she was directed to do so by Officer Branum.

19.

Ms. Anderson was shoved up against a wall with several other arrestees after her arrest by Officer Branum.  While against the wall, APD officers, including Officer Branum, cursed at and taunted Plaintiff.

20.

The stop, search, and seizure of plaintiff and her property was without probable cause, arguable probable cause, or reasonable suspicion of any criminal activity; rather such conduct was carried out for the purpose of harming Plaintiff, chilling speech and suppressing information gathered about police activity.

21.

The actions of the defendant during the incident were pursuant to a policy, custom and practice of the APD and City of Atlanta that encouraged police seizure of cameras of citizens monitoring police activity and/or was done with the final approval or ratification of the final decision-maker for such issues. All actions were done under color of law, and with deliberate indifference to clearly established rights of the plaintiff.  Such policies, customs and practices caused the violation of Ms. Anderson's rights in this case.

22.

The relevant APD policy then in effect, APD Standard Operating Procedure 3020, Subsection 4.3.1, is both unconstitutional and authorized the suspicionless seizure in this case.[1]

23.

The Atlanta Police Department also has an unconstitutional policy, custom, and practice to detain "suspicious" individuals without reasonable articulable suspicion that the individual being detained is involved in criminal activity, as reflected, among other places, by APD Standard Operating Procedure (S.O.P.) 3065 ("Field Interviews") (which authorizes and directs Atlanta police officers to detain and check the IDs of "suspicious persons" without requiring reasonable

---

[1] SOP 3020 Subsection 4.3.1 provides:

1. There is a constitutional preference for searches to be conducted pursuant to a warrant rather than without one. Searches conducted without a warrant, are per se unreasonable, subject to only a few specifically and well-delineated exceptions.

2. To justify a warrantless search, two essential elements must exist:

a. It must be established that the circumstances at the time of the search were sufficient to require immediate action, which necessitated not complying with the restrictions of the warrant requirement of the Fourth Amendment.

b. The manner and scope of the search that was conducted must be reasonably related to the justification of the search.

3. In a lawful search without a warrant, officers may seize any contraband, stolen property, or mere evidence of a crime which is in plain view and which is immediately recognizable as such, provided that the scope of the search was strictly tied to and justified by the circumstances that rendered it permissible when initiated. In this case the officer/investigator should make every effort to 'Freeze' the scene and obtain a warrant before searching the premises more thoroughly.

9

articulable suspicion regarding the individual being detained.)  This policy was in effect at the time Branum arrested Ms. Anderson.

24.

As of October 14, 2009, the City were deliberately indifferent to the need for a policy, custom or practice to provide guidelines governing the search and seizure of individuals within constitutional standards.  The knowledge that such a policy was needed would have been obvious to the City based, in part, on the number of prior instances in which APD officers detained individuals which were later determined by a judicial body to be unlawful or which resulted in lawsuits against and settlements by the City with the aggrieved parties or their representatives. That the City failed to implement such a policy amounts to deliberate indifference to the constitutional rights of Ms. Anderson since her unlawful arrest of October 14, 2009 was the direct result of the City's failure to implement and adopt such a policy.

25.

The APD has demonstrated a pervasive failure to train officers regarding the requirements of the Fourth Amendment, including when it would or would not be permissible for APD officers to search and seize an individual engaged in protected First Amendment activity.

26.

Prior to October 12, 2009, APD officers routinely searched and detained individuals engaged in protected First Amendment activity, particularly when such activity was intended to document police activity. Such unlawful conduct included either the search or the seizure (or both) of the instrument or thing – for example, a camera or a cell phone equipped with recording capability – which was being used by the individual as his or her means of engaging in First Amendment activity.

27.

On July 9, 2009 at or around 1400 Donald Lee Hollowell Parkway, APD Officer Dominique Pattillo forcibly confiscated the cell phone of Frankie Turner who had used his cell phone to film police activity involving the now disbanded RED DOG unit. Mr. Turner's cell phone is still in APD custody despite repeated requests by Mr. Turner that the phone be returned to him.

28.

Moreover, on at least four separate occasions, officers from the Atlanta Police Department ordered members of a local community organization called Copwatch of East Atlanta ("Copwatch") to cease filming police activity, and have threatened or attempted to confiscate cameras on at least three occasions. During

each such incident, members of Copwatch documented police activity that took

place in public and did not interfere with the activities of the officers.

29.

Subsequent to the events in this lawsuit, on or around February 10, 2011, the

APD agreed to adopt a policy that prohibits officers from interfering with and

arresting individuals who are documenting police activity, either by photography

or video. This policy was adopted as part of a settlement between APD and

Copwatch of East Atlanta. Branum's conduct in this case would have clearly

contravened such a policy.

30.

Even after the adoption of this policy, however, APD officers have

continued to prevent citizens and residents from filming police activity in public.

On or around August 30, 2011, members of Copwatch documented an incident in

downtown Atlanta in which APD officers had "pepper sprayed" an individual.

This incident occurred on a public sidewalk. During the filming of this incident,

APD officer T. Dziamba repeatedly requested members of Copwatch if they had

"media credentials." Another APD officer ordered members of Copwatch to stop

filming. This same officer then began recording the physical descriptions of the

Copwatch members with his cell phone in a retaliatory manner.

31.

The Atlanta Police Department has demonstrated a pervasive failure to discipline police officers for unlawful conduct involving unreasonable seizures of persons and property.

32.

As an example, although the Atlanta Citizen Review Board ("ACRB") has sustained complaints against dozens of police officers for unlawful conduct the Atlanta Police Department has never once followed the ACRB's recommendation to impose discipline.

33.

As just one specific example among many, the ACRB recommended that discipline be imposed against the officer who unlawfully arrested an individual by the name of Minnie Carey because Ms. Carey did not move from a public sidewalk after being commanded to do so by the arresting APD officer. The Chief of Police rejected that recommendation.

34.

Nor has the City of Atlanta disciplined any of the many APD officers who have been involved in "drug raids" which were carried out by the now-disbanded RED DOG unit (like the one that forms the basis of this complaint) despite

numerous complaints by residents that officers involved in these raids routinely violated their constitutional rights.

35.

In defending the conduct of APD officers including those who participated in the Atlanta Eagle Raid and the RED DOG drug raids rather than imposing discipline upon these officers, the City of Atlanta has demonstrated a deliberate indifference to the violation of Fourth Amendment protections.  Had the City, in fact, disciplined these officers, Defendant Branum would not have abused his authority as an officer in seizing Ms. Anderson's camera, deleting its contents, and then arresting her without arguable probable cause and in retaliation for her having engaged in protected First Amendment activity.

36.

Moreover, numerous Fourth Amendment violations by APD officers have demonstrated the compelling need for effective training regarding constitutional law on search and seizure which the APD has failed or refused to provide.

37.

On July 14, 2009, the Atlanta Citizen Review Board ("ACRB") recommended that the Atlanta Police Department conduct training regarding Fourth Amendment issues including "Terry stops." The Chief of Police rejected this recommendation.

38.

In connection with its investigation of a raid conducted by APD officer on the Atlanta Eagle bar the ACRB reviewed "records concerning the department's in-service training for officers during 2008 and 2009. There was no indication officers received training concerning constitutional law."

39.

The ACRB "Study of Supervisory Responsibility" regarding the Atlanta Eagle Raid also reported that: "It became evident during the course of the investigation that many officers are unfamiliar with the constitutional requirements for conducting a search and/or seizure."

40.

Deposition testimony and public statements related to the Atlanta Eagle Raid by senior APD commanders including former Chief Richard Pennington, Deputy Chief Carlos Banda, and Major Debra Williams also suggest a pervasive lack of training regarding basic Fourth Amendment concepts such as the requirements of a lawful Terry stop; the requirements of a lawful frisk; and the definition of an arrest, among other subjects. These statements suggest both the failure of the Atlanta Police Department to train these employees themselves, as well as the improper training provided by senior commanders to the subordinates

who look to them for guidance.

41.

As a result of her arrest, Ms. Anderson spent several hours at the City of Atlanta Detention Center.  She was subjected to prosecution and has hired an attorney to assist in her defense.  This prosecution is ongoing, with the case currently being "bound over" from Atlanta Municipal Court to Fulton County State Court.  Plaintiff's last court date in this underlying matter came on December 16, 2009 in Atlanta Municipal Court.  She has not received any notice from Fulton County State Court since that time.  Ms. Anderson believes that the charges have been "dead docketed."

## CLAIMS FOR RELIEF

42.

The allegations set forth in all the preceding paragraphs are incorporated by reference herein for each and every claim for relief.

43.

Citizens have a First Amendment right to document police conduct occurring on public property in a non-disruptive way. Thus, Plaintiff was within her rights to film police activity in a public place. By preventing filming, seizing a camera from Plaintiff as she peaceably monitored police activity, and then

16

destroying images from that camera; Defendant deprived Plaintiff of her right to freedom of speech as protected by the First and Fourteenth Amendments, as well as the Georgia Constitution Article I, Section I, Paragraphs V and IX.

44.

The Fourth Amendment prohibits the police from detaining a person or seizing ones belongings without probable cause or reasonable suspicion of unlawful activity. Defendant Branum seized Ms. Anderson and seized her camera -- violating her right to be secure in her person and be free from unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendments of the United States Constitution, as well as the Georgia Constitution Article I, Section 1, Paragraph I, VII, and XIII.

45.

The actions of the APD officers, including Officer Branum, were in violation of clearly established constitutional rights which a reasonable officer should have known.

46.

By arresting Ms. Anderson and seizing her camera without legal authority, Defendant falsely imprisoned her in violation of O.C.G.A. § 16-5-41.

47.

By arresting Ms. Anderson and seizing her camera without legal authority, Defendant, with malice and oppression, falsely imprisoned Ms. Anderson under color of legal process in violation of O.C.G.A. § 16-5-42.

48.

By arresting Ms. Anderson and seizing her camera without legal authority, Defendant falsely imprisoned her in violation of O.C.G.A. §§ 51-7-20, 22.

49.

By seizing Ms. Anderson's possessions, Defendant deprived plaintiff of possessions in violation of O.C.G.A. § 51-10-1.

50.

By seizing Ms. Anderson's possessions, Defendant trespassed on personalty in violation of O.C.G.A. § 51-10-3.

51.

By intentionally and with force touching and seizing Anderson and her camera, Defendant committed battery against her in violation of O.C.G.A. § 16-5-23.

52.

By subjecting Ms. Anderson to a criminal prosecution with malice and without any probable cause that a crime had been committed, Defendant

committed the offense of malicious prosecution in violation of O.C.G.A. § 51-7-40 for the "dead docketed" charges leveled against her.

## PRAYERS FOR RELIEF

WHEREFORE, on the basis of the foregoing, Plaintiff respectfully prays that this Court:

(A) Assume jurisdiction over this action;

(B) Award nominal and modest compensatory damages against each Defendant in an amount subject to proof;

(C) Award punitive damages to Anderson, if any, against Defendant Branum according to federal and state law;

(D) Award reasonable attorneys fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable state and federal laws;

(E) Award such other and further relief as this Court deems just and proper.

DATED: This the 6th  day of October, 2011.

Respectfully submitted,

/s Gerald Weber
Gerald Weber
(Georgia Bar No. 744878)

Southern Center for Human Rights
83 Poplar Street, N.W.

Atlanta, Georgia 30303
wgerryweber@gmail.com
(404) 688-1202

/s Albert Wan
Albert Wan
(Georgia Bar No. 334224)

Albert Wan, Attorney at Law
1201 Peachtree Street NE
400 Colony Square, Suite 200
Atlanta, GA 30361
albert@albertwanlaw.com
(404) 872-7760

/s Daniel J. Grossman
Daniel J. Grossman
(Georgia Bar No. 313815)

Law Office of Daniel J. Grossman
1579 Monroe Drive, Ste F-138
Atlanta, GA 30324
Dan@DanGrossmanLaw.com
(404) 654-0326