# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division <u>OCOP</u>          Section <u>ADMINISTRATION</u>          Unit _____

Items distributed: <u>APD-SOP .2011. GENERAL CONDUCT</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| Chief G. N. Turner | *(signature)* | 12/17/14 |
| Deputy Chief C.J.Davis | *(signature)* | 12/17/14 |
| Major V.Moore | *(signature)* | 12/17/14 |
| Sergeant C.M.Pack | *(signature)* | 12/17/14 |
| Investigator E. Britman | *(signature)* | 12/17/14 |
| Ms. Patricia Freeman | *(signature)* | 12/17/14 |
| Ms. Kathy Terry | *(signature)* | 12/17/14 |
| Ms. Jacqueline Wright | *(signature)* | 12-17-14 |
| Sergeant Niya Mitchell | *(signature)* | 12/17/14 |
| Sgt. Angela Blue | *(signature)* | 12/17/14 |
| *(handwritten)* | *(signature)* | |

| Training Conducted by | Sergeant C.M. PACK | |
|---|---|---|

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-289

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division <u>OCOP</u>          Section <u>ADMINISTRATION</u>     Unit _____

Items distributed: <u>APD-SOP 3080 GENERAL PROCEDURES</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| Chief G. N. Turner | *George N. Turner* | 12/17/14 |
| Deputy Chief C.J.Davis | *C.J. Davis* | 12/17/14 |
| Major V.Moore | *V. Moore* | 12/17/14 |
| Sergeant C.M.Pack | *C.M. Pack* | 12/17/14 |
| Investigator E. Britman | *Earl P. Britman* | 12/17/14 |
| Sergeant Niya Mitchell | *N. Mitchell* | 12/17/14 |
| Sgt. Angela. Bus. | *Ann Bus* | 12/12/14 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| Training Conducted by | Sergeant C.M. PACK |  |

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division _SSD_   Section _Academy_   Unit _Admin_

Items distributed: _APD.SOP. 2011 General Conduct_

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt D Vill | Lt D Vill | 12-8-14 |
| D.K. TOLLESON | Maj D.K. Taylor | 12/8/14 |
| MACarter | MCA | 12/8/14 |
| KARMEN WILLIAMS | _(signature)_ | 12-8-14 |
| Patricia Powell | _(signature)_ | 12-8-14 |
| Cerrina Leeks | _(signature)_ | 12-8-14 |
| Ajani Harmon | _(signature)_ | 12-8-14 |
| Kason Brooks | _(signature)_ | 12/8/14 |
| DeKonti Davis | DeKonti Davis | 12/9/14 |
| Scott Jimenez | _(signature)_ | 12/9/14 |
| William J. Lyons | William J. Lyons | 12/09/14 |
| Hardy Carson | _(signature)_ | 12/04/14 |
| Shaun Houston | _(signature)_ | 12/10/14 |
| Amy Soeldner | A. Soeldner | 12/15/14 |
| Meredith Crowder | Meredith Crowder | 12/19/14 |
| P.K. Fite | M Fite | 12-19-14 |
| A.D. Hall | A.D. Hall | 12/19/14 |
| C. Davenport | Sgt C. _(signature)_ | 12/19/14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-291

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division <u>Support Services</u>          Section <u>Communications</u>          Unit _____

Items distributed: <u>APD.SOP.3080 (General Procedures)</u>
<u>APD.SOP.2011 (General Conduct)</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| D.B. Schierbaum (3580) | DBSch | 12-22-2014 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-292

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division **CID**          Section **SES**          Unit **FBTF/PAWN DESK**

Items distributed: **APD.SOP.2011 General Conduct**

**General Procedures APD.SOP.3080**

*Lt. Dan Rasmussen*

| Employee's name | Employee's signature | Date |
|---|---|---|
| Rasmussen, Dan Lt. | | 12/10/14 |
| Terrance Capitol | | 12-10-14 |
| Flvellon, Olympia | | 12/10/14 |
| Agan, Danny | | 12/10/14 |
| FLORES, ANGELA | | 12/10/14 |
| Allen, Ken | | 12.17.2014 |

ANDERSON-293

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __CID__          Section __SES__          Unit __Vice/Violent Crime TF__

Items distributed:  __General Procedures APD SOP 3080__

__General Conduct APD SOP 2011__

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt Jeff Cantin   2907 | | 12/10/2014 |
| Sgt. Jessica Bruce 4035 | | 12-10-14 |
| Sgt. Keith Israel 4214 | | 12-10-14 |
| Major Barbara Cavender 1027 | BCav | 12-10-14 |
| Ofc. Christopher Brown 5411 | | 12-10-14 |
| Ofr. Lascelles Simpson 5299 | | 12-10-14 |
| S. D. Williams   5855 | | 12/10/14 |
| Inv. Peter Harris   4771 | | 10 Dec. 14 |
| Inv. William Kellner 4565 | | 12/10/14 |
| Inv. S.L. Dunbar   4997 | | 12/10/14 |
| Ofc. Justin M. Hensal 5224 | | 12/10/14 |
| Ofc. Matthew T. Gilstrap 5630 | | 12/10/14 |
| Ofc. Gordon Payne 5290 | | 12/10/14 |
| Ofc. William Wilson 6027 | | 12/10/14 |
| Ofc. Jeff Leach 5268 | | 12/10/14 |
| Ofc. V. Wise   5265 | | 12-10-14 |
| Ofc. J. Hartsfield 5133 | | 12-10-14 |
| Ofc. J. Ayala 5441 | | 12-15-14 |
| Inv. K. Riester 4330 | K. Riester | 12/15/14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-294

## ATLANTA POLICE DEPARTMENT
## PRINTED MATTER CONTROL SHEET

*ADP SOP. 3080*

**DIVISON:** **CID**       **SECTION:** **SES**       **UNIT:** **APEX**
**ITEM DISTRIBUTED:** "**General Conduct**"       "**General Procedures**"

| LAST | FIRST | DATED RECEIVED | INITIALS |
|---|---|---|---|
| Patterson | James | 12-16-14 | |
| Lester | Val | 12/9/14 | |
| Ruben | Frank | 12/18/14 | F. |
| Turner | Frudge  *FURDGE* | 12-16-14 | |
| Walker | Ronald | 12/18/14 | |
| Alvarez | Alex | | |
| Basile | Jacob | 12/16/14 | |
| Blaise | Christopher | 12-16-14 | |
| Bleifeld | Ari | 12/18/14 | |
| Cornelius | Johnathan | 12-16-14 | |
| Ernest | Brian | 12-16-14 | |
| Fisher | Brittany | 12-18-14 | |
| Fisher | Kenneth | 12/18/2014 | |
| Fluellen | Olympia | SENT IN WITH | RASMUSSEN |
| Garner | Gabriel | 12-16-14 | |
| Godwin | Robert | 12-18-14 | Rob Godwin |
| Griffin | Andrew | 12-16-14 | |
| Hayes | Aaron | 12/16/14 | |
| Jones | Richard | 12-9-14 | |
| Johnson | William | 12-18/14 | |
| Khoury | Kareem | 12/18/14 | |
| Miller | Robert | 12/18/14 | |
| Nelson | Jamie | 12.9.14 | |
| Parent | Nichelle | 12-16-14 | |
| Phelps | Maurice | 12-18-14 | |
| Pucci | John | 12-18-14 | |
| Salazar | Darwin | 12/16/14 | |
| Sperl | Richard | 12/18/14 | |
| Stephens | Runako | 12/18/14 | RSte |
| Toler | Darrin | 12-18-14 | D. Toler |
| Weber | William | 12-9-14 | |
| Whitefield | Daryn | 12-16-14 | |
| Worrell | David | 12-16-14 | |
| Young | John | 12-16-14 | |
| Hardin-Dowd | Shontel | 12-9-14 | |
| Beverly   PMC1 12/9/14 | Robert | 12-16-14 | |

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __CID__          Section __SES__          Unit __LICENSE & PERMITS__

Items distributed: __APD.SOP.3080 GENERAL PROCEDURES__

| Employee's name | Employee's signature | Date |
|---|---|---|
| LT. R. GREER – Gave out @ Roll call | Robert Greer | 12/9/14 |
| SGT. B BURNS | | 12/18/14 |
| SGT. K. WALLS | K. Walls | 12-9-14 |
| INV. E. MILES | Ed Miles | 12/9/14 |
| INV. Y. TYUS | | D/18/14 |
| INV. R. SCANDRICK | R Scandrick | 12/10/2014 |
| INV. M. GEURIN | M. Geurin Jr | 12-08-14 |
| INV. G. SMITH | G. Smith | 12-5-14 |
| OFC. R. MCCLURE | | 12-9-14 |
| OFC. L. CANNON | L Cannon | |
| OFC. R. ANAYA | R Anaya | 12-09-14 |
| INSP. T. CANTRELL | T Cantrell | 12-12-14 |
| INSP. F. GRAHAM | F Graham | 12/12/14 |
| INSP. J. SNEED | | 12-11-14 |
| INSP. E. SHROPSHIRE | E Shropshire | 12-10-14 |
| INSP. F. ARMOND | F Armond | 12-9-14 |
| MS. C. WHEELER | Connie Wheeler | 12/12/14 |
| MS. B. COVEN | Barbara Coven | 12-9-14 |

404 699 0432          COA PD AUTO TASK FORCE          09:34:44 a.m.    12-17-2014          1 / 1

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division _CID_                    Section _SES_                    Unit _FBTF/PAWN DESK_

Items distributed: _APD.SOP.2011 General Conduct_

_General Procedures APD.SOP.3080_

_Lt. Dan Rasmussen — leave out @ Rollcall_

| Employee's name | Employee's signature | Date |
|---|---|---|
| Rasmussen, Dan Lt. | _(signature)_ | 12/10/14 |
| Terrance, Capitol | _(signature)_ | 12-10-14 |
| Fluellen, Olympia | _(signature)_ | 12/10/14 |
| Agan, Danny | _(signature)_ | 12/10/14 |
| Flores, Angela | _(signature)_ Angela J Flores | 12/10/14 |
| Allen, Ken | _(signature)_ | 12.17.2014 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-297

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __CID__                     Section __SES__                     Unit __Gang Unit__

Items distributed: __General Procedures APD.SOP.3080__

| Employee's name | Employee's Signature | Date |
|---|---|---|
| Lieutenant David Wilson | | 12/18/2014 |
| Sergeant Archie Ezell | | 12/15/14 |
| Sergeant Roland Thomas | | 12/15/14 |
| Inv. M. Belknap | | 12/9/14 |
| Inv. S. Berhalter | | 12/9/14 |
| Inv. O. Curry | | 12/08/14 |
| Inv. M. Conner | Michael Conner | 12/08/14 |
| Inv. G. Dabney - Admin | | 12/15/14 |
| Inv. L. Gaither | | 12/8/14 |
| Inv. T. Dennis | | 12/8/14 |
| Ofc. M. Davis | Micah J Davis | 12/16/14 |
| Inv. W. Murdock | William Murdock | 12/10/14 |
| Inv. J. Sobocinski | | 12-8-2014 |
| Ofc. C. Kettel | | 12-9-14 |
| Ofc. C. Murphy | | 12-15-14 |
| Ofc. R. Price | | 12/17/14 |
| | | |
| INV. K. Underwood | | 12/9/14 |

_Lieutenant D. Wilson provided the training covering the SOP .3080 focus on 4.12.2._

ANDERSON-298



| Atlanta Police Department Policy Manual | | Standard Operating Procedure |
|---|---|---|
| **Effective Date** November 1, 2013 | | APD.SOP.3080 General Procedures |

**Applicable To:** All sworn employees

**Approval Authority:** Chief George N. Turner

**Signature:** Signed by GNT | **Date Signed:** 10/31/2013

Table of Content

| | | |
|---|---|---|
| 1. | PURPOSE | 1 |
| 2. | POLICY | 1 |
| 3. | RESPONSIBILITIES | 2 |
| 4. | ACTION | 2 |
| 4.1 | Officer Discretion and Alternatives to Physical Arrest | 2 |
| 4.2 | Community Policing | 2 |
| 4.2.7 | Benefits of Community Policing | 3 |
| 4.2.8 | Beat Officer's Role | 3 |
| 4.3 | Preliminary Investigation | 3 |
| 4.3.2 | Suspect Identification | 4 |
| 4.3.3 | In-Custody Physical Lineups | 4 |
| 4.3.4 | Photographic Lineups | 5 |
| 4.3.5 | Show-ups | 6 |
| 4.3.6 | Street Identification | 7 |
| 4.3.7 | Preliminary Investigation Case Management | 8 |
| 4.4 | Bias Based Profiling (CALEA 5th ed. standard 1.2.9) | 8 |
| 4.5 | Citizen Referrals | 9 |
| 4.5.8 | United Way 211 Online | 9 |
| 4.6 | Contagious Diseases | 11 |
| 4.6.5 | Precautions | 11 |
| 4.6.6 | Testing | 13 |
| 4.6.7 | Confidentiality | 14 |
| 4.6.8 | Segregation and Restriction of Activities | 14 |
| 4.6.9 | Line of Duty Exposure to Contagious Diseases. | 14 |
| 4.6.10 | Disposal of Contaminated Items | 14 |
| 4.6.11 | Contaminated Evidence | 15 |

| | | |
|---|---|---|
| 4.7 | Damage to City Property | 15 |
| 4.7.1 | Damage Caused by Traffic Accidents | 15 |
| 4.8 | Employee Related Accident Invest Package(s) | 15 |
| 4.8.1 | Supervisor of employee involved in accident | 15 |
| 4.8.2 | Miscellaneous Damage | 16 |
| 4.9 | Stolen Vehicles as Result of Other Crimes | 16 |
| 4.10 | Alien and Non-English Speaking Persons | 16 |
| 4.11 | Vehicle Forfeiture in Narcotic Cases | 17 |
| 4.12 | Search Incident to a Lawful Arrest | 18 |
| 4.12.2 | Strip/Body Cavity Searches | 18 |
| 4.13 | Investigative Assistance | 19 |
| 4.13.2 | Request a Homicide Investigator when: | 20 |
| 4.13.3 | Request Missing Person Investigator when: | 20 |
| 4.13.8 | Request a zone robbery investigator when: | 21 |
| 4.13.9 | Request a zone burglary investigator when: | 21 |
| 4.13.10 | Request a zone larceny investigator when: | 21 |
| 4.14 | Mini Motors | 22 |
| 4.15 | Bicycle Patrols | 22 |
| 4.21 | Confidentiality and Nondisclosure Agreements | 23 |
| 5. | DEFINITIONS | 24 |
| 6. | CANCELLATIONS | 26 |
| 7. | REFERENCES | 26 |
| 7.1.1 | Figure 1: Preliminary Investigation Checklist | 28 |
| 7.1.2 | Figure 2: Confidentiality and Nondisclosure | 29 |

1.       **PURPOSE**

The intent of this directive is to provide officers with guidance for answering calls and interacting with citizen on a daily basis.

2.       **POLICY**

The Atlanta Police Department seeks to provide responsive service to the public and appropriate support for its patrol officers.

ANDERSON-299

 ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures 

3.        RESPONSIBILITIES

3.1       Each division, section and unit commander shall ensure that all employees under their command are familiar with this procedure.

3.2       Supervisors shall monitor this process and ensure that this procedure is followed.

4.        ACTION

4.1       Officer Discretion and Alternatives to Physical Arrest
          (CALEA 5th ed. standards 1.2.6 & 1.2.7)

          An officer's discretion is an essential function of effective law enforcement.  Discretion shall be used in accordance with departmental policy. What is reasonable in terms of appropriate enforcement action or constitutes probable cause varies with each situation. Different facts may justify an investigation, a detention, a search, an arrest or no action at all. Some situations result in a report being written, or in cases of minor offenses or where no violations have been committed a verbal warning or other referral can be made. In each case, an officer must act reasonably within the limits of his or her authority, as defined by statue and judicial interpretation. Whether an officer makes a physical arrest or releases someone on a copy of charges, the officer shall not inhibit the individual's right of access to the courts, which is accomplished by assigning or obtaining a court date.

4.2       Community Policing

4.2.1     The Community Policing strategy recognizes the importance of police commitment to dealing with the underlying conditions that cause crime, in order to reduce or impact crime in neighborhoods.

4.2.2     Officers should solicit active community involvement in defining local problems, and the setting of police priorities in responding to such problems. There must be a working partnership between the police and the community based upon mutual trust and respect.

4.2.3     The creation of neighborhood-based working coalitions that comprehensively attack crime and other problems offer a real opportunity for success. Responses to the crime problem must involve collaborative efforts between the police, other service providers and the community.

4.2.4     Police officers who provide services on the street are one of the most valuable resources of any police department. Community Policing stresses the critical need to facilitate ways for officers to apply creative and effective ways to impact neighborhood problems.

4.2.5     Shifting Resources Closer to the Neighborhoods.  If police officers in the future are to have success in dealing with the problems in their neighborhoods, they must have access to police and other resources available to them. Decentralizing resources shall contribute to a more efficient utilization of personnel, increased citizen satisfaction.

4.2.6     Fixed Internal Responsibility and Accountability. The Community Policing strategy needs to be based on the operational foundation of allowing commanders, supervisors, and police officers to be creative in seeking solutions to neighborhood problems. Success in this process is based on police personnel accepting a sense of ownership for these problems and doing everything possible to help solve them.

ANDERSON-300



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



4.2.7    Benefits of Community Policing

1.  Community Policing adds a proactive element to the reactive role of policing. Officers should be an influence to the young people of the community and help them develop into responsible, law-abiding citizens.

2.  Community Policing augments the traditional police approach and provides the community a full spectrum of police services from the quick response only a motor patrol can provide, to the personal touch that only human interaction can provide.

3.  Community Policing provides community members with the means to help themselves as well as to assist the police officer in providing services.

4.2.8    Beat Officer's Role

1.  Community Policing begins with the beat officer. Beat officers should get to know the residents and business owners on their beats by becoming a part of the community.

2.  Officers should be active when not on call and conduct visits to the residents and businesses in the community.

3.  Officers should be aware of and have ready access to the social service agencies available to provide assistance for residents in the community.

4.  Officers are encouraged to identify all community leaders and to attend community meetings to include Neighborhood Watch meetings.

5.  Officers should be familiar with their neighborhoods so as to spot when things are out of the ordinary, such as unfamiliar vehicles or individuals in the area.

6.  Officers should initiate action to identify, analyze, and develop solutions for the causes of the problems in their assigned community.

7.  Officers should solicit information and ideas from community members and provide telephone numbers for supplying this information.

8.  Officers must take action to prevent crime.

9.  Officers must be accountable for their actions.

10. Officers must engage in teamwork, initially and in structured problem solving to meet the Department's mission of a safer Atlanta.

4.3      Preliminary Investigation
         (CALEA 5th ed. standard 42.2.1)

4.3.1    During the preliminary investigation, the first responding officer may refer to the Preliminary Investigation Checklist (figure 1) for guidance. Activities during the preliminary investigation shall center on the protection of persons, collection of evidence, apprehension of criminals at or near the crime scene and solving the reported crime. The first responding officer shall perform the following duties in the order and the degree deemed appropriate:
         (CALEA 5th ed. standard 42.2.3)

ANDERSON-301




**ATLANTA POLICE DEPARTMENT POLICY MANUAL**
APD.SOP.3080
General Procedures

1. Make the crime scene safe by observing all conditions, events, actions, and remarks of individuals in the immediate area of the crime scene (CALEA 5th ed. standard 42.2.1a).

2. Notify the Communications Section concerning injured parties and any dangerous conditions present, and request appropriate medical assistance and additional equipment, services, or personnel as needing.

3. Assist the injured pending arrival of EMS personnel. In serious cases, an officer shall be assigned to accompany the victim or the suspect to the hospital and remain with him or her to record information on the incident.

4. Determine if a crime was committed by statue.

5. Take written notes and conduct voice recordings whenever possible.

6. Establish a crime scene perimeter, and secure the crime scene to the degree possible against alterations due to weather or other contamination until it can be properly processed for the collection of evidence (CALEA 5th ed. standard 42.2.1 c).

7. Locate and identify witnesses (CALEA 5th ed. standard 42.2.1 d).

8. Interview the complainant, witnesses, and suspect (CALEA 5th ed. standard 42.2.1d).

   a. Keeping the physical, financial, and emotional state of the complainant, victim or witness in mind as well as the resources available to the Department every effort should be made to schedule photo line-ups, interviews, and other related contacts to create the least amount of burden on them (CALEA 5th ed. standard 55.2.4c).

4.3.2   Suspect Identification

Identification procedures must be carefully arranged to avoid the danger or erroneous or suggestive identifications and to ensure the admission in court of accurate identification evidence.

4.3.3   In-Custody Physical Lineups

1. The officer in charge shall explain the lineup procedure to the suspect by advising him or her that he or she:

   a. Shall be required to stand in the lineup to allow a witness an opportunity to make identification for a specified incident.

   b. May be required to speak, move, or make gestures, wear or remove clothing upon request by a witness to the officer conducting the lineup.

   c. Has the right to an attorney to represent him or her at the lineup.  If the suspect cannot afford an attorney then one shall be appointed to represent the suspect at the lineup. The attorney shall be given a reasonable time to arrive.

   d. Has the right to waive the presence of an attorney and to proceed with the lineup.  The waiver of an attorney should be made in writing, knowingly, without threats, fear, or promise of reward from the officer.

ANDERSON-302

 
2. When selecting participants for the lineup, the officer shall:

    a. Select at least five other persons of similar characteristics (e.g., sex, age, height, weight, type clothing, race).

    b. Allow the suspect to choose his or her position number.

    c. Inform the participants of the seriousness of the procedure and instruct them not to make any movement or gesture which would divulge the identity of the suspect.

    d. Number the participants in numerical order from left to right as seen by the witness(es).

3. To ensure fairness and minimize suggestiveness during the physical lineup procedure, the officer shall:

    a. Make every effort to ensure that each identification is free from the influence of other participants. Witnesses shall be separated before, during, and after the confrontation and shall be instructed not to discuss the lineup with other witnesses.

    b. Refrain from any action or conduct that might suggest to the witness that a particular individual is believed to be guilty.

    c. Require all lineup participants to speak or make a movement if the witness requests a particular person in the lineup do so, starting from number one through six.

    d. Require the witness to mark the appropriate space on the "Witness Lineup Identification Form," which corresponds with the participant's number, if positive identification is made.

4. After all witnesses have viewed the lineup, the officer shall:

    a. Ensure that a permanent visual record is made of the lineup by requesting the Identification Unit to photograph all members in the lineup in the exact sequence in which the witness viewed them.

    b. Obtain statements from the witnesses who made positive identifications.

    c. Ensure that the following are completed:

    1. Lineup Form - lists information on participants and witnesses and outcome of lineup.

    2. Witness Lineup Identification Form - shows which person, if any, the witness identified as being the suspect.

    3. Waiver of Lineup Form - written record of suspect's waiver of counsel at the lineup proceeding, if applicable.

4.3.4    Photographic Lineups

1. Officers shall use a minimum of six photographs when conducting a photographic lineup. To minimize the possibility of suggestiveness, the photographs shall:

ANDERSON-303

 ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures 

    a. Be recent and depict persons with similar characteristics, such as sex, race, age, hair style, etc.

    b. Be of the same type, size, color, lighting.

    c. Show the suspect only once in the display.

    d. Not depict identifying information that would link the suspect to a specific crime.

    e. Be presented so that the suspect's photograph is not emphasized and does not stand out from the rest.  Care should be taken that the pattern of time sequence of the display is not suggestive.

    f. Cover any portion of the photographs which refers to a police agency, prison facility, age, weight, height, etc.

2. The officer should:

    a. Not tell the witness that the suspect's photo is among those displayed.

    b. Not tell the witness that other evidence exists which connects the suspect to the crime.

    c. Not allow the witness to view the back of the picture if information is written on it.

    d. Not allow the witness to view the photographs in front of other witnesses.

3. If the witness positively identifies a photograph, the officer shall:

    a. Require the witness to initial the back of the photograph so it can be subsequently produced in court for identification purposes.

    b. Have the witness complete and sign the photograph identification form.

    c. Ensure that a written supplement is made of the photographic lineup procedure.

    d. Turn all of the photographs used in the photographic display in to the Property Control Unit marked "evidence." Photographs should not be kept in the file folders.

4.3.5     Show-ups

1. Show-ups shall only be used in the following situations:

    a. When a suspect is apprehended at or near the scene of a crime within a reasonable amount of time after its commission, and the officer determines that an immediate identification is necessary to aid in a speedy police investigation and avoid the possibility of confining an innocent person for the length of time needed to hold a lineup.

    b. When a prompt confrontation with the victim is necessitated by the lack of opportunity for a lineup due to the victim's critical condition.

ANDERSON-304



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



2. A "totality of circumstances" test shall be applied to show-up confrontations to determine the reliability of the identification.  Factors that shall be considered include:

    a. Did the witness have the opportunity to view the suspect at the time of the crime?

    b. Was the defendant the only individual who could possibly be identified as the guilty party by the witness or were there others near him at the time of the confrontation to negate the assertion he was shown alone to the victim?

    c. Was there any compelling reason for a prompt confrontation rather than securing other similar individuals for the purpose of holding a lineup?

    d. Was the witness' identification a product of mutual reinforcement of opinion among others simultaneously viewing the suspect?

    e. Were any statements made to the witness prior to the confrontation that would indicate that the police were sure of the suspect's guilt?

3. If a suspect is identified by a witness, the officer shall:

    a. Make a report detailing the circumstances that led to the arrest and identification.

    b. Allow only one witness to view the suspect for identification purposes and require the other witnesses, if any, to view the suspect in an in-custody lineup.

4. Officers shall take every possible step to protect witnesses during the show-up. Suspects shall not be taken to witnesses' homes or work places. The witness shall be brought to the place where the suspect is being detained.

4.3.6    Street Identification

1. The following procedures should be followed during this type of identification:

    a. Advise the witness that you wish for him or her to view several individuals for possible identification.

    b. Advise the witness that he or she shall be carried to several service stations, grocery stores, or other types of business similar to where the suspect works (normally not more than three).

    c. Advise the witness to carefully observe at these different locations and advise the officer if he or she can make a positive identification.

2. The following procedures should be followed by the officer to prevent any unnecessary suggestiveness:

    a. Do not relate to the witness any information that would indicate the identity of the suspect.

    b. Do not drive to the place of employment of the suspect first.

ANDERSON-305




ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

    c.   The number of persons at the various places of employment shall be the controlling factor as to the number of different job locations to be viewed.

   3.   If the suspect is identified, the officer should:

    a.   Make a detailed supplement surrounding the circumstances of the identification, listing the locations viewed and number of persons at each.

    b.   Obtain an arrest warrant and arrest the suspect.

    c.   Hold an in-custody lineup for other witnesses, if any.

**4.3.7**   Preliminary Investigation Case Management

   1.   Patrol officers shall pursue preliminary investigations to the full extent of their available time and investigative training. In most minor property crimes, patrol personnel shall assume responsibility of the crime scene and conduct any on-scene and follow-up investigation that may be necessary.

   2.   The preliminary investigation shall, whenever practicable, be completed by the end of the shift in which it occurs. The supervisor of the shift shall review, approve as appropriate, and forward the preliminary investigative report to the CID as soon as practicable.

   3.   In exceptional instances, when circumstances prevent the timely completion of the report, the supervisor shall ensure that a draft report of the incident is completed, thereby ensuring that the CID is aware of the incident and has the necessary information to initiate a follow-up investigation if warranted.

**4.4**   Bias Based Profiling (CALEA 5th ed. standard 1.2.9)

**4.4.1**   The Training Academy shall provide training on bias-based profiling to include, but not limited to, field contacts, traffic stops, search issues, seizures, interviews, cultural diversity, discrimination and community support.

**4.4.2**   Supervisors shall monitor employee's actions and shall investigate any complaint alleging that an employee targeted a citizen based on bias-based profiling in accordance with APD.SOP.2020 "Disciplinary Process".

**4.4.3**   The Office of Professional Standards shall conduct an internal investigation if an officer is alleged to have targeted a person due to bias.  OPS shall monitor complaints to detect any patterns suggesting bias-based profiling and shall conduct an annual administrative review of Department practices including citizen concerns.

   1.   The annual review shall be distributed to the following:

    a.   Chief of Police;

    b.   Division commanders;

    c.   Planning, Research, and Accreditation Unit; and

    d.   Training Academy.

ANDERSON-306



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



2.  Copies shall be retained for five years.

4.4.4   Biased based profiling, the selection of individuals for law enforcement attention based solely on a common trait of a particular group, is prohibited. All sworn employees shall exercise their authority in a manner that does not unlawfully discriminate against individuals based solely on race, ethnic background, gender, sexual orientation, religion, economic status, age, cultural group or any other identifiable groups to which the person may belong.

4.4.5   All sworn employees shall exercise their authority based on conduct, behavior or specific information, reasonable articulable suspicion or probable cause.

4.4.6   The Training Academy shall train all sworn employees on this policy to include legal aspects of officer/citizen contacts, cultural diversity and cultural awareness.

4.5   Citizen Referrals

4.5.1   Zone supervisors shall ensure employees under their immediate supervision are aware of and utilize the service of the Victim Witness Assistance Program (VWAP) that provides comprehensive service to victims and witnesses of crime in accordance with the Georgia Crime Victim's Bill of Rights.

4.5.2   The Community Oriented Policing Section (COPS) may accept referrals from members of the community, patrol officers, and investigators of youth in need of counseling and guidance through recreational activity (Police Athletic League) and by providing follow-up assistance.

4.5.3   Officers and investigators shall make support agency referrals and may advise zone chaplains, crime prevention inspectors, and other appropriate persons of situations that require immediate intervention.

4.5.4   In addition to making appropriate referrals for victims, the Special Victims Unit shall respond to every case referred to them from the Department of Family and Children's Services (DFCS).

4.5.5   The Department's Director of Chaplains shall be responsible for establishing a network among organized religions, NPU's (Neighborhood Planning Units), human service agencies, and the Atlanta Police Department to assist zone commanders and citizens in decreasing violent crimes, and to improve the quality of life for the residents within the City.

4.5.6   The School Detective Section shall provide individual counseling and mentoring through Department approved programs for students in middle and high schools.

4.5.7   All employees in the course of performing their duties shall promote cooperative working relationships with other criminal justice agencies, public safety agencies, and social service agencies. An employee who encounters a citizen in need of assistance from social service agencies is encouraged to make an appropriate referral.

4.5.8   United Way 211 Online

1.  To get information on appropriate referrals, the employee may use the United Way's database on social service agencies by:

a.  Dialing 211 by telephone;

ANDERSON-307

 

ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

b. Using the http://211online.unitedwayatlanta.org/ website either directly over the internet or through the link on Horizon; or

c. Dialing directly on the employee's radio (ePortable: XTS 5000 – Type Two &Three and Mobile: XTL 25000 and XTL50000).

2. When logging onto the United Way information online screen, to access the United Way thirteen county service area, the employee shall complete steps 1 and 2, by entering the zip code area or city, age and sex of the person needing social service assistance.  Then select the following options:

a. List of services by category.

| | |
|---|---|
| Business/Consumer Environmental Services | Facility Types |
| Clothing/Food/Personal Goods/Services | Family/Community Services |
| Counseling/Crisis Services | Health/Medical Mental Health |
| Disaster Services | Legal Services/Immigration |
| Donations | Shelter/Housing/Transportation |
| Education and Training | Target Population |
| Employment and Financial Service/Assistance | Volunteer Opportunities |

b. Services by word or phrase, for juvenile diversion search on the word "diversion".

c. Agencies or programs by name.

3. The employee should examine all facts available at the time to determine the appropriate agency and service category options.

After selecting the service category, the employee then may access the specific social service or diversion program desired.

4. Once the appropriate agency has been identified, the Department's employee shall contact the respective social service agency and determine the agency's policy on acceptance and referrals.  At this time, all available information should be relayed to the agency representative and to the individual in need of assistance.

ANDERSON-308




ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

5.  If the individual is a juvenile (see: APD.SOP.3190 "Juvenile Procedures"), the employee shall make every effort to contact the juvenile's parent or guardian.  If the efforts to locate parents or guardian are unsuccessful, the employee shall contact DFCS.

6.  Officers and investigators shall identify victims or witnesses of crime who require services of the Victim Witness Assistance Program (VWAP).  After contacting respective VWAP advocates, the VWAP advocates shall provide the services at crime scenes and during subsequent investigations as outlined in APD.SOP.3100 "Victim Witness Assistance", including, but not limited to, the following services:

    a.  Immediate crisis intervention and counseling;

    b.  Immediate referrals to appropriate shelter or safe houses;

    c.  Referrals to appropriate social service agencies;

4.6  Contagious Diseases

4.6.1  Employees are responsible for the use of discretion to limit their exposure to contagious diseases.

4.6.2  The Training Academy is responsible for disseminating updated information concerning contagious diseases in roll call, in-service and basic training.  The Training Academy shall ensure that employees are familiar with the basic symptoms, means of transmission, precautions, and high-risk categories of the most common and most dangerous of such diseases.

4.6.3  Commanding officers shall be responsible for the inventory and dissemination of supplies for contagious disease control.   They shall also initiate re-ordering procedures before supplies become depleted.

4.6.4  Supervisors are responsible for storing in the supervisor's police vehicle the following supplies:

    1.  Protective disposable gloves (three pairs for each person he or she is supervising);

    2.  Red plastic bags and sealing ties;

    3.  Rags for marking plastic bags;

    4.  Tape marked "Danger - Contaminated Area"; and

    5.  Extra CPR protective masks with the one way value.

4.6.5  Precautions

    1.  Employees shall take reasonable precautions to avoid exposure of themselves or others to airborne infectious disease.  Equally, they shall avoid direct contact with body substances of persons encountered during the tour of duty and shall reasonably protect others from such exposure.

    2.  Employees shall use protective gloves if there is a likelihood of contact with body substances.  Employees shall dispose of protective gloves after each contact with body

ANDERSON-309

 ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures 

substance in accordance with this procedure.  Employees are reminded that rings, jewelry or long fingernails may compromise the structural integrity of gloves.

3.   Cleaning after Contact

   a.   Employees shall thoroughly wash hands after each contact with body substances.  The use of Instant Hand Sanitizer, while helpful shall not take the place of a through washing of the hands with warm soapy water.

   b.   Contaminated clothing should be separated from non-contaminated clothing, but treated the same as normal washing.  If contaminated clothing is sent to commercial cleaners, it should be placed in an impervious laundry bag first.

   c.   On equipment, cars, etc., employees should ensure that the prompt clean up of body substances is accomplished with a 9 to 1 mixture of water to household bleach.

4.   Employees who are bitten by a person should:

   a.   Allow the wound to bleed, but do not massage wound;

   b.   Wash the area thoroughly with soap and water; and

   c.   Seek medical attention at the nearest appropriate medical facility.

5.   Employees confronted with situations requiring cardiopulmonary resuscitation (CPR) should be aware of the fact that research indicate that there is an extreme unlikelihood of HIV or Hepatitis B Transmission through saliva.  However, employees shall utilize the protective masks with the one way valve whenever possible.  Protective masks shall be cleaned after being used with a 9 to 1 mixture of water to household bleach.  Protective masks may be replaced in the Property Control Unit.

6.   The risk of contagious disease infection from being cut or punctured by contaminated needles and other sharp instruments appears to be very low.  However, many employees are concerned about such incidents and the following procedures are to be utilized to protect employees when conducting searches and handling evidence suspected of contamination:

   a.   Whenever possible and safe to do so, ask suspects to empty their own pockets;

   b.   If searching a purse, carefully empty contents directly from purse, by turning it upside down over a table;

   c.   Whenever possible, use long-handled mirrors and flashlight to search hidden areas;

   d.   If it is necessary to search manually, always wear protective gloves and feel very slowly and carefully;

   e.   Use puncture-proof containers to store sharp instruments and clearly marked plastic bags to store other possible contaminated items; and

   f.   Use tape - never metal staples - when packaging evidence.

ANDERSON-310



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



7. The primary precaution for employees not required to handle evidence at a crime or accident scene is to follow procedures and not touch anything. For detectives, crime scene technicians, and others who may have to touch or remove a body, wear gloves, cover all cuts and abrasions to create a barrier against infections, and carefully wash all exposed areas after any contact with body substances. These procedures should be followed in all cases, regardless of whether the subject is known or suspected to be infected.

8. A police vehicle contaminated by a body substance shall be driven, if practical, to the municipal shop for de-contamination. Employees shall follow the same procedures for de-contamination of a vehicle as for shopping a vehicle for repairs.

9. Employees shall avoid smoking, eating, drinking, nail biting, and hand-to-mouth, hand-to-nose, and hand-to-eye actions while working in areas contaminated with body substances.

10. Employees shall keep all cuts and open wounds on exposed parts of their body covered with clean bandage.

11. Employees shall wash hands thoroughly with soap and water after removing gloves and after any contact with body substances.

12. Employees exposed to known tuberculosis or meningitis patients will be tested appropriately. Employees who transport a suspected or known tuberculosis or meningitis patient will notify his or her supervisor, transport the subject with the vehicle's windows open, the air conditioning off and the fan in non-re-circulate mode.

4.6.6   Testing

1. Where exposure, or presumed exposure, of employees or persons occurs as a direct result of Department action, notification shall be given immediately, or as soon as practical, to the employee's immediate supervisor or higher authority along the employee's chain of command. The Department shall offer and encourage voluntary testing, at City expense, of both the exposed person and the presumed carrier. The same testing is offered and encouraged if in any manner exposure, or presumed exposure, occurs to a person in the custody of an employee. If testing is declined, in the eyes of the Department succeeding development of symptoms may not be attributable to the specific incident in question at the time of refusal.

2. Employees or other persons shall not be physically forced to submit to testing for any communicable disease, except as allowed by law or court order.

3. Employees who decline voluntary testing may be mandated in writing to submit to testing by the Chief or his designee. Refusal to be tested after such an order may subject the employee to disciplinary action.

4. Applicants are required to undergo testing for the presence of communicable diseases as a prerequisite to employment.

5. Tests shall be administered by Department-approved agencies in conformity with requirements for detection of disease and for reasonable determination of the time of infection (e.g., within the proper time frame and according to medical standards).

ANDERSON-311

 

ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

4.6.7     Confidentiality

Where exposure, or presumed exposure, of an employee or any other person occurs as a direct result of Department action, subsequent test results, as well as the names of individuals tested, requesting testing, or recommended for testing, shall be held as confidential, to be revealed only as provided by law and mandated by Department of Human Resources regulations.

4.6.8     Segregation and Restriction of Activities

1.   Employees who arrest a known carrier of the AIDS or Hepatitis B virus shall write "AIDS Carrier" or "Hepatitis B Carrier" on the top of the arrest ticket.

2.   Employees or persons in custody who are found to be a contagious carrier of a specific airborne disease such as tuberculosis that presents a serious health risk to others shall be segregated from those not infected.

3.   A disease transmitted through physical contact with the body substances of an infected carrier shall not require segregation of infected persons from those not infected, unless failure to do so would jeopardize the successful operation of a Department -approved activity, or unless it is evident that the nature of contact required for transmission is likely to occur.

4.   Where any person is, or is presumed to be, a contagious carrier of a disease not spread by casual contact, the mere presence, or presumed presence, of the disease shall not be justification for restricting the activities of that person, unless failure to do so would jeopardize the successful operation of a Department -approved activity, or unless it is evident that the nature of contact necessary for transmission is likely to occur.

4.6.9     Line of Duty Exposure to Contagious Diseases.

1.   Employees shall document actual or suspected exposure to contagious diseases or contaminated materials by completing a standard Department incident report.

2.   Employees shall write "Exposure to Contagious Disease" in the "Primary Offense Information/Offense and Description" Section of the ICIS incident reporting system. When applicable, and appropriate, Employees shall write "Exposure to Contagious Disease" in the "Describe How the Incident Occurred" Section of Form APD 001 (Incident Report).

3.   The report shall contain all information related to the exposure.  A complaint number shall be obtained for filing purposes, if the exposure is not accompanied by an arrest or reported incident.

4.   When an exposure occurs as a result of an arrest or reported incident, the employee shall complete a detailed report and obtain a complaint number.  This procedure is similar to the arrest report where there is an injury on duty.

4.6.10     Disposal of Contaminated Items

1.   Employees who obtain disposable items that have body substances on or in  them, such as rubber gloves, syringes, etc , shall place the items in a red plastic bag and seal the contaminated bag.

ANDERSON-312

 

ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

    2.    The bag shall be tagged or labeled with the words in large print, "For Disposal - Contagious Disease Contamination".

    3.    Employees shall hand carry the sealed red bag containing the contaminated items for disposal to:

        a.    The Atlanta Police Department
              Property Control Unit (PCU)
              3493 Donald Lee Hollowell Pkwy, NW
              Atlanta, Georgia 30331
              Office: (404) 546-4330

        b.    Hours of operation - 24 hours each day including weekends.

        c.    To verify the location of the Contaminated Item(s) disposal container, call the PCU at: (404) 546-4330, for assistance.

        d.    Place the items within the "Contaminated Items" receptacle located within the PCU.

## 4.6.11    Contaminated Evidence

    1.    Evidence with contaminated body substances on the items of evidence shall be processed the same as other evidence and in addition shall be placed in a paper bag and sealed without attempting to decontaminate them.

    2.    The paper bag shall be tagged or labeled with the following words in large print: "Evidence, Contagious Disease Contamination."

## 4.7    Damage to City Property

## 4.7.1    Damage Caused by Traffic Accidents

    1.    Whenever an officer handling a traffic accident which involves damage to City property, including fire hydrants, traffic signals, traffic signs, etc., the type of damage and the name of the City agency shall be identified and included in the Georgia Uniform Motor Vehicle Accident Report Form.  In addition, if the damage involves any property belonging to the Police Department, an incident report shall be completed.

    2.    Whenever City property is damaged, a separate Incident Report will be completed and submitted by the investigating officer.

## 4.8    Employee Related Accident Investigation Package(s)

## 4.8.1    The supervisor of the employee involved in an accident will:

    1.    Respond to the accident scene; if the accident occurred outside of APD jurisdiction, the supervisor will obtain the accident report from the agency having jurisdiction;

    2.    Review the accident report prepared by the investigating officer;

    3.    Prepare any necessary supplemental reports;

ANDERSON-313



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



4.    Prepare a Supervisor Accident Investigation Summary (Form APD 705);

5.    Deliver copies of these reports to the employee's Section commander;

6.    Obtain photographs;

7.    Obtain damage estimates; and

8.    Make recommendation(s) of findings.

4.8.2    Miscellaneous Damage

1.    Whenever an officer handles a call involving damage to property belonging to any City agency, an incident report shall be completed.  In addition, if damage to a public utility exists, officers shall advise the Communications dispatcher who shall contact the utility to ensure that a restoration of safe and effective operation of the public utility component is completed.

4.9    Stolen Vehicles as Result of Other Crimes

4.9.1    All sworn officers responding to the scene of a homicide, rape, robbery, aggravated assault or burglary in which a vehicle is stolen shall:

1.    Obtain the description of the vehicle including the license plate information and the VIN if possible and broadcast to other units throughout the City.

2.    Contact the Central Records Unit and give the Central Records Unit representative the CADS number of the call in order for the complaint number to be listed in the GCIC entry. The Central Records Unit shall not complete an incident report.

4.9.2    Officers not having access to public service shall go to TAC radio and give the necessary information.  The TAC operator shall relay this information to the Central Records Unit.

4.10    Alien and Non-English Speaking Persons

4.10.1    Officers shall handle field contacts with persons of different cultures in the same manner as any other field interview.

4.10.2    Any call or contact resulting in an arrest of a citizen of another country shall be handled in accordance with APD.SOP.3030 "Arrest Procedures".

4.10.3    Officers shall ask individuals for identification in accordance with proper procedures for routine field investigations, but shall at no time specifically ask to see a person's "green card" or other immigration documents.

4.10.4    Officers suspecting that the individual they have detained, in violation of a felony is an alien may contact the Immigration and Customs Enforcement (ICE) Police Support Line 24 hours a day at (802) 872-6020.  They shall advise the procedure for transmitting fingerprints via fax to make identification and put a hold on the subject if necessary.

4.10.5    Officers suspecting that a foreign national is involved in organized crime should contact the Special Investigations Section for further follow-up.

ANDERSON-314



4.10.6 Officers shall contact the Communications Section in situations where the difference in language creates a barrier, in order to locate an interpreter if at all possible.

4.10.7 Officers in the field and any other employee needing interpretation service shall contact the Communications Section as provided in APD.SOP.6010 "Communications", for access to the Language Line. The employee should use the "I Speak ..." Language Identification Guide to determine the language spoken by the individual, in accordance with APD. SOP 6143 "Limited English Profiency".

4.11 Vehicle Forfeiture in Narcotic Cases

4.11.1 An officer coming in contact with a vehicle being used for the purpose of transporting, holding, concealing, or in any manner facilitating the transportation of controlled substances, marijuana, or materials including equipment, which are used or intended for use in the manufacture of these drugs, shall seize this vehicle and notify the Financial Investigations Unit.

4.11.2 Supervisors shall insure that all officers aggressively pursue appropriate seizure options when they come in contact with a vehicle meeting the forfeiture criteria. The supervisor shall insure that the appropriate notification is made to the Financial Investigations Unit. The supervisor shall insure that a copy of the completed incident report is sent directly to the Financial Investigations Unit.

4.11.3 When making an arrest involving a controlled substance, and a motor vehicle was used to transport, hold, or conceal the controlled substance, the arresting officer shall seize the vehicle.

1. When possible the arresting officer should obtain post-Miranda statements implicating the motor vehicle and in those cases where the arrestee is not the owner, implicating the owner as knowledgeable about the use of the motor vehicle by the arrestee.

2. The arresting officer shall impound the vehicle and include information in the incident report referencing the vehicle is being held for drug forfeiture. The vehicle impound slip has a section entitled, "Hold the vehicle for," in the space provided specify "FIU".

3. The arresting officer shall Inventory the seized vehicle. All vehicle documentation shall be placed in a property envelope and turned into the Property Control Unit. This shall include, when available the title, tag receipt, insurance card, bill of sale, and any repair receipts for the vehicle. All property, evidence and documentation recovered from seized vehicles, shall be turned into the Property Control Unit and documented in the incident report.

4. The arresting officer shall secure all vehicle keys including ignition, trunk, and door keys. All keys shall be turned over to the wrecker driver.

5. The arresting officer shall complete the offense report particularly describing the circumstances leading to the seizure, the quantity and type of drugs seized, the location in the vehicle where the drugs were found and the way the drugs were packaged.

6. The arresting officer shall forward all reports through the chain of command with a copy going directly to the Financial Investigations Unit.

ANDERSON-315

 

ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

4.12        Search Incident to a Lawful Arrest

4.12.1      The type of search conducted (e.g., frisk, field search or strip search, etc.) is dependent upon the situation surrounding the detention or arrest. A recognized exception to the search warrant requirement is a search incident to a lawful arrest. This exception permits an officer to perform a warrantless search during or immediately after a lawful arrest. The reason for the search is to remove any weapons the arrestee may use to resist arrest or effect an escape or to search and seize any evidence in order to prevent concealment or destruction. The Atlanta Police Department recognizes three (3) types of searches incident to a lawful arrest.

4.12.2      Strip/Body Cavity Searches
            (CALEA 5th ed. standard 1.2.8)

      1.    A strip search or a body cavity search incident to a lawful arrest shall only be conducted where reasonable articulable suspicion exists that the suspect is concealing a weapon, explosive device, or contraband, and may be conducted only at a jail, correctional, or detention facility after transport.  After an initial search incident to an arrest, the officer shall:

            a.    Notify his or her supervisor that the subject in the officer's custody may be concealing an unknown item and request permission to have a strip search or body cavity search conducted.

            b.    Request that a strip search or body cavity search be conducted by the Department of Corrections at the jail after transport. Searches must be conducted out of public view and by a person of the same gender. Body cavity searches must be conducted by qualified medical personnel.

            c.    Ensure that the incident report contains detailed information about the search to include: the date, place and time of the search; the justification for the search; the name of the person conducting the search; the name of any witnesses to the search; the identity of the person being searched; and the type of contraband located and where on the body found.

      2.    A body cavity search that is not incident to a lawful arrest must be supported by a search warrant. If an officer has probable cause to believe that a person is concealing a weapon, explosive device, or contraband, the officer shall obtain a search warrant prior to a body cavity search.

            a.    Searches must be conducted out of public view and by a person of the same gender. Body cavity searches must be conducted by qualified medical personnel.

            b.    Ensure that the incident report contains detailed information about the search to include: the date, place and time of the search; the justification for the search; the name of the person conducting the search; the name of any witnesses to the search; the identity of the person being searched; and the type of contraband located and where on the body found.

      3.    A field search is the search of an arrestee at the time of arrest in order for the officer to seize any weapons or contraband.  The scope of the field search shall include a frisk or pat-down of the arrestee's clothing and a search of the arrestee's pockets, socks, shoes, hair, and waistband.

ANDERSON-316




ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

    a. If you have a reasonable articulable suspicion that the arrestee is hiding contraband or a weapon due to the type of arrest (e.g., murder, armed robbery, drug sales, etc...) or during the field search you have determined that the arrestee is concealing a weapon or other contraband, you should retrieve it immediately.

    b. A "Strip Search" is more intrusive than a "Field Search." Officers may reasonably retrieve weapons or contraband during the "Field Search" as long as the make every effort not to expose the arrestee's undergarments, buttocks, anus, genitals, or breasts to view.

    c. **Remember, the reasonableness of such searches will be measured by the need for the search, the efforts of the officers to protect the privacy of the suspect, the intrusiveness of the search, and the location where the search was done. Without these protections, every arrest would result in a strip search. Such intrusive searches should only be done by officers of the same sex as the suspect – absent extreme and compelling circumstances.**

  4. Definitions

    a. <u>Strip Search</u>:  Removal or rearrangement of clothing to permit visual inspection of a person's 1) undergarments, 2) buttocks, 3) anus, 4) genitals, or 5) breasts.  The following does <u>not</u> constitute a strip search: 1) removal or rearranging of clothing reasonably required to render medical treatment or assistance, or 2) removal of articles of outer clothing, such as coats, ties, belts or shoelaces.

    b. <u>Body Cavity Search</u>:  Visual inspection or manual search of a person's anal cavity or vaginal cavity.

    c. <u>Field Search</u>: A search of the arrestee at the time of arrest in order for the officer to seize any weapons or contraband.  The scope of this search shall include a frisk or pat-down of the arrestee's clothing and a search of the arrestee's pockets, socks, shoes, hair, and waistband.

4.12.3    The choice of a searching position (i.e. kneeling, prone etc.) is dependent on the context in which the search is conducted.  The officer in choosing the searching position must not only consider his or her welfare but also the welfare of onlookers and the suspect.

4.13    Investigative Assistance

4.13.1    This procedure is designed to assist officers in determining which situations require assistance from the Criminal Investigations Division (CID). In the event an investigator is unable to go to the scene, the field officer shall, whenever feasible, take the results of the preliminary investigation to the appropriate CID office. Whenever an investigator is assigned or assumes responsibility for an investigation, the investigator shall be responsible for ensuring that all necessary reports are completed and turned in.  Should a question arise that is not specifically addressed in this procedure, the officers shall contact the field supervisor or the appropriate unit within CID. Whenever an officer makes an arrest, the officer is responsible for any required investigative or court related follow-up, including preparing the master file, unless specifically relieved of this responsibility by an investigator on the scene or a supervisor.  Whenever an officer reports a misdemeanor (in particular, vandalism), the officer is responsible for the investigation and clearing of the crime.

ANDERSON-317

 

ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

4.13.2  Request a Homicide Investigator when:

1.  A death resulted from the criminal act of another person.

2.  A person has received an unexplained violent injury that has resulted in or may result in death.

3.  A person received an injury that is likely to result in death because of the criminal act of another.

4.  A kidnapping is reported.

5.  A police involved shooting regardless of the seriousness of the injuries.

6.  Homicide should not be summoned when it is evident that the death resulted from natural causes, suicide, or an accident.  In such cases, the officer shall notify the medical examiner (404) 730-4400), which shall determine if Homicide investigators are needed.

NOTE:  When the injury is such that death shall not likely occur, but was caused by a gun or a knife, and shall not likely result in death, an investigator from the zone shall be called to the scene.

4.13.3  Request Missing Person Investigator when:

1.  A person seventeen or older who is incapable of taking care of himself or herself without supervision is reported missing.

2.  A person seventeen or older who is in need of immediate medical attention is reported missing.

4.13.4  A Special Victims Unit (SVU) investigator shall be requested when an incident of rape or aggravated sodomy involving an adult (age seventeen and older) has occurred. SVU shall also be requested for sex-related offenses against minors if a Child Exploitation Unit investigator is not available.

4.13.5  A Crimes Against Children Investigator shall be notified when:

1.  A child under the age of seventeen is reported missing.

2.  In situations of deprivation, insufficient and improper guardianship, or where the officer has determined that an abusive home condition exists.

3.  For further clarification, see APD.SOP.3085 "Missing Persons" and APD.SOP.3190 "Juvenile Procedures".

4.13.6  A Child Exploitation Unit investigator shall be requested in cases involving sex-related offenses committed against juveniles. An investigator shall be notified of incidents involving child prostitution, child pornography, or cases involving either where the Internet was utilized.

4.13.7  Request a Narcotics investigator if a quantity of drugs is found or other indicators or evidence suggest that the subject is a dealer or if the officer is unable to identify the drug.

ANDERSON-318

 

4.13.8   Request a zone robbery investigator when:

    1.   A commercial robbery has occurred.

    2.   Physical injuries incurred during a robbery require immediate medical attention and might result in the victim being admitted to the hospital.

    3.   Evidence is found on or near the scene connected with the incident, such as weapons, vehicles, clothing, or money, that indicates an immediate follow-up  investigation is needed.

    4.   An on-site arrest is made and statements from witnesses and case preparation indicate additional follow-up investigation is needed.

4.13.9   Request a zone burglary investigator when:

    1.   A suspect is apprehended.

    2.   The responding officer has made an on-the-scene investigation and believes an immediate follow-up is necessary.

4.13.10   Request a zone larceny investigator when:

    1.   A larceny arrest involves a pickpocket, multiple perpetrators,

    2.   A larceny report involves a loss greater than $5,000.

4.13.11   Request a Major Fraud investigator when the theft involves stolen credit cards, checks, stocks, bonds, or other negotiable instruments.

4.13.12   The Special Enforcement Section (SES) shall be contacted when any officer encounters a case involving evidence of the crimes that follow.  SES shall either come to the scene or work from the officer's incident report when crimes involve incidents of:

    1.   Organized street/youth gangs; or

    2.   Organized crime figures; or

    3.   Fully automatic rifle or sub-machine guns; or

    4.   Vice activity; or

    5.   Public corruption; or

    6.   Bias crime suspects; or

    7.   High level drug dealers; or

    8.   Any crime that does not fit into the crime against property or person category (except street-level drugs).

ANDERSON-319



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



4.13.13   Other situations requiring investigative assistance are:

1.   When a suspect is arrested for a crime involving a substantial loss, or when the processing of statements is vital to the prosecution or investigation of the case.

2.   When the officer has information regarding a crime or suspect that requires an investigative follow-up beyond the scope of the officer's assigned duties.

4.14   Mini Motors

4.14.1   Mini motors shall be used to provide high visibility or additional patrol services in high crime and/or high vehicular or pedestrian traffic areas, based on specific needs of the Zone.

4.14.2   The Zone commander, or his or her designee, is responsible for maintenance and repair of mini motors assigned to their section.

4.14.3   Mini motors are not equipped with emergency equipment and may not be used to perform traffic stops.

4.14.4   Employees must possess a valid Georgia Class M drivers license and complete a Department approved motorcycle training course prior to operating a mini-motor.

4.14.5   Employees must wear a Department approved or issued helmet at all times while operating a mini motor.

4.15   Bicycle Patrols
(CALEA 5th ed. standard 41.1.3)

4.18.1   The Department will use all available resources, such as bicycles, to meet the challenges of community-oriented policing and to reduce crime and its impact on community through the use of bicycle patrols

4.18. 2   Bicycle patrol officers will concentrate on problems specified by the zone and section commander.

4.18.3   Bicycle patrol officers will usually be assigned to patrols of at least two officers, but may patrol alone at the zone or section commander's discretion.

4.18.4   Bicycle patrol officers will be assigned to regular patrol areas and are encouraged to establish relationships with the members of the community.  Members will attend community meetings and support community projects as directed by the section commander.

4.19.   Segways and Similar Transportation Devices

4.19.1   Segways and similar transportation devices shall be managed and regulated via a Section Command Memorandum.

4.20   Reporting Hazardous Conditions
(CALEA 5th ed. standard 61.4.2)

4.20.1   The officer shall report any immediate hazard to persons or property to Communications for immediate action.

ANDERSON-320



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



4.20.2   Upon notification of an immediate hazard, Communications shall contact the appropriate Department via telephone for action.

4.20.3   Upon observing or responding to a potentially hazardous condition, the officer shall identify the hazard and complete the Maintenance Checklist (Form APD-678) as follows:

NOTE: Complete one report form for each type of hazard found:

1.   Date of Report:  Date hazard observed or reported.

2.   Check appropriate box for the hazard.

3.   Other Agency:  Agency not listed above (e.g., utility, State or County department).

4.   Location:  Exact location of the hazard.

5.   Condition Reported:  List any special description of the hazard.

6.   Reported By:  Officers name, unique four-digit ID number.

7.   Dept/Office: Zone/Precinct.

8.   Tel No:  Precinct Phone Number.

4.20.4   The officer shall forward the completed report to the watch commander.

4.20.5   The watch commander shall forward the maintenance checklist (Form APD-678) via inter departmental mail to the appropriate department for action to be taken.

1.   Department of Planning & Community Development (404) 330-6070.

2.   Department of Watershed Management (404) 330-6081.

3.   Department of Parks, Recreation & Cultural Affairs (404) 546-6788.

4.   Department of Public Works (404) 330-6240.

4.21     Confidentiality and Nondisclosure Agreements

4.21.1   Employees who are in an assignment that provides or allows access to information that is not generally known to the general public and/or to other employees within the Department may be required to enter into a Confidentiality and Nondisclosure Agreement as a condition of that assignment.

4.21.2   The Chief of Police, or the respective division or section commander shall determine the necessity of the Confidentiality and Nondisclosure Agreement.

4.21.3   After signing a Confidentiality and Nondisclosure Agreement, the original shall be placed in the employee's personnel file, with a copy to be kept at the work site and a copy for the employee.

ANDERSON-321

 

ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

5.      DEFINITIONS

5.1     Acquired Immune Deficiency Syndrome (AIDS): A disease that undermines the human body's immune system, rendering the individual susceptible to a range of infections, malignancies and other diseases.

5.2     Body Cavity Search: Visual inspection or manual search of a person's anal cavity or vaginal cavity.

5.3     Body Substance:  includes blood, saliva, urine, semen, wound drainage, teardrops, feces and sputum.  Blood has the highest concentration of AIDS and Hepatitis B viruses.

5.4     Bias-Based Profiling:  The selection of an individual(s) based solely on a trait common to a group for investigative or law enforcement action.  This includes, but is not limited to, race, ethnic background, gender, sexual orientation, religion, economic status, age, cultural group or any other identifiable group.

5.5     Community Oriented Policing: focuses on crime and social disorder through the delivery of police services that includes aspects of traditional law enforcement, as well as prevention, problem-solving, community engagement, and partnerships. The community-policing model balances reactive responses to calls for service with proactive problem solving centered on the causes of crime and disorder. Community policing requires police and citizens to join together as partners in the course of both identifying and effectively addressing these issues.

5.6     Contagious Disease (also, communicable or infectious disease) :  Those disease which may be transmitted or passed from one person (a carrier) to another.  For the purpose of this document, contagious disease refers to those diseases, which, according to current medical knowledge, may be presumed to present a serious health threat to an otherwise healthy person.

5.7     Court Order: A warrant issued by a court commanding a peace officer to take a person into custody and deliver him or her to the nearest emergency receiving facility to undergo a psychological examination or psychiatric treatment.

5.8     Demented Person: Any person having a disorder of thought or mood which significantly impairs his or her judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life.

5.9     Diversion:  An alternative to entry into the criminal justice system by citizens or juveniles in need of social or health intervention.

5.10    Doctor's Certificate: A document executed by a licensed physician or psychologist of this state, stating that he or she had personally examined the individual within the preceding 48 hours and found that the person appeared to be mentally ill and required involuntary treatment or psychological examination.

5.11    Emergency Receiving Facility : Medical facility used for psychological evaluations and psychiatric treatment.

        1.  For demented persons arrested anywhere in the City:  The Psychiatric Emergency Clinic on the thirteenth floor of Grady Memorial Hospital.

ANDERSON-322

 

ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

2.   For demented persons picked up in Fulton County with no criminal charges:  The Psychiatric Emergency Clinic on the thirteenth floor of Grady Memorial Hospital.

3.   For demented persons picked up in DeKalb County with no criminal charges:

| | |
|---|---|
| 8 am to 5 pm<br>Monday-Friday | Kirkwood Mental Health Center<br>23 Warren Street SE<br>Atlanta, Georgia 30317<br>Phone:  (404) 370-7474 |
| All other hours | Georgia Mental Health Institute<br>1256 Briarcliff Road NE<br>Atlanta, Georgia 30306<br>Phone:  (404) 894-5643 |

5.12   <u>Exposure</u>:  contact of blood or other body substance against mucous membrane or broken skin.  Contact of blood or other body substance against intact skin <u>does not</u> constitute an exposure.

5.13   <u>Field Search</u>:  A search of the arrestee at the time of arrest in order for the officer to seize any weapons or contraband.  The scope of this search shall include a frisk or pat-down of the arrestee's clothing and a search of the arrestee's pockets, socks, shoes, hair, and waistband.

5.14   <u>Frisk</u>:  A pat-down search of a suspicious person for weapons large enough to be detected through clothing.

5.15   <u>Hepatitis B</u>:  a liver disease caused by Hepatitis B virus, causing symptoms ranging from mild illness to death.  It is most often transmitted by contaminated blood.

5.16   <u>HIV</u>:  Human Immunodeficiency Virus - the virus that causes AIDS.

5.17   <u>Report of Peace Officer</u>:  A form to be completed by a police officer on every occasion that a demented person is transported to an emergency receiving facility.  (This is the back of Georgia Department of Human Resources Form 1013.)

5.18   <u>Restraints</u>:  Handcuffs, leg irons, strait-jackets, straps, and any other device used to bind or hinder the movement of an individual.

5.19   <u>Strip Search</u>:  Removal or rearrangement of clothing to permit visual inspection of a person's 1) undergarments, 2) buttocks, 3) anus, 4) genitals, or 5) breasts.  The following does <u>not</u> constitute a strip search: 1) removal or rearranging of clothing reasonably required to render medical treatment or assistance, or 2) removal of articles of outer clothing, such as coats, ties, belts or shoelaces.

5.20   <u>United Way 211</u>:  A listing of social service agencies offered by United Way via a telephone (211) or through a web link to assist citizens within a 13 county service area.

<u>http://211online.unitedwayatlanta.org/</u>:  The United Way web link for identifying social service agencies to assist citizens and juveniles in need of social and health intervention.

ANDERSON-323



ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures



5.21    Tuberculosis:  A communicable disease, caused by a bacteria resulting in lesions in the lungs, bones and other body parts. Tuberculosis may be contracted through respiratory secretions from the respiratory tract.

5.22    Meningitis:  An acute bacterial infection of the brain and spinal cord associated with fever, severe headache, nausea, vomiting and coma.

6.      CANCELLATIONS

        APD.SOP.3080 "General Procedures", effective July 15, 2012 and signed July 19, 2012

        APD.SOP3080 R1 "General Procedures", effective April 1, 2012 and signed March 22, 2012

7.      REFERENCES

        APD.SOP.1090 "Inspections"
        APD.SOP.2080 "Training"
        APD.SOP.2130 "Dress Code/Uniforms"
        APD.SOP.3100 "Victim Witness Assistance"
        APD.SOP.3152 "Traffic Accident Review Board"
        APD.SOP.3190 "Juvenile Procedures "
        APD.SOP.5180 "School Detective Unit"
        APD.SOP.6110 "Chaplaincy"
        APD.SOP.6140 "Community Services Section "
        APD.SOP 6143 "Foreign Language Resources

        Commission on Accreditation for Law Enforcement Agencies 5th Edition Standards, (CALEA) 1.1.3,1.2.6, 1.2.7, 1.2.8, 1.2.9 ,41.1.2, 41.1.3,42.2.1, 42.2.3, 55.2.4, 61.4.2.

        O.C.G.A. § 40-6-291 "Bicycles and Traffic Laws"
        O.C.G.A. § 40-6-294 "Operating Bicycle on the Right Side of Roadway"
        O.C.G.A. § 40-6-296 "Bicycle Equipment"

        Community Oriented Policing Services (COPS), www.cops.usdoj.gov, "What is community policing?" (Definition)

        Atlanta Police Department Referral Reference Guide
        Joel P. Smith, Jr., M.D. Consultant, Atlanta Medical Associates

        U.S. Department of Justice, National Institute of Justice
        Aids and the Law Enforcement Officer:  Concerns and Policy Responses, June 1987

        U.S. Department of Justice, National Institute of Justice
        Precautionary Measures and Protective Equipment: Developing a Reasonable Response, February 1988

        The Police Chief, Model Policy for Management, by IACP
        Acquired Immune Deficiency Syndrome/Infectious Disease, December 1987

        Department of Health and Human Service, Center for Disease Control
        Recommendations for Protection Against Viral Hepatitis, June 7, 1985

ANDERSON-324




ATLANTA POLICE DEPARTMENT POLICY MANUAL
APD.SOP.3080
General Procedures

Department of Health and Human Services, Center for Disease Control
Guidelines for Prevention of Transmission of Human Immunodeficiency virus and Hepatitis B
Virus to Healthcare and Public - Safety Workers, June 23, 1989

Crawford Long Hospital of Emory University
Body Substance Isolation Manual, 1988. Doctor Manette Niu, CDC Resource Person, 639-2343

ANDERSON-325

7.1.1      Figure 1: Preliminary Investigation Checklist

---

**Preliminary Investigation Checklist**
(CALEA 5th Edition Standard 42.2.3)

❏  Notify a supervisor if the immediate presence of a criminal investigator is deemed necessary.

❏  Arrest and Mirandize suspects and record any spontaneous utterances verbatim.

❏  If a suspect or suspects have fled the scene, provide communications with their names, addresses, or locations if known and their descriptions including clothing, vehicle(s) used, and whether they are considered armed.

❏  Create a log to document the time of arrival and departure of emergency and investigative personnel.

❏  Locate, separate, and identify witnesses for possible follow-up contact. Obtain name, alias, date of birth, home address, work address, home and work phone numbers, and a cellular phone number if available. Conduct basic interviews as time and circumstances permit. (CALEA 5th ed. standard 42.2.1b)

❏  As time permits and priorities allow, check with neighboring businesses and residents as well as friends and relatives of the victim who may be available and who are routine visitors to the location where the crime occurred.

❏  Notify an immediate supervisor when unusual circumstances are present such as a secondary crime scene or when other immediate investigative or related actions need to be taken.

❏  Complete a neighborhood canvass and record, which neighbors are at home and may be so situated as to have information pertinent to the investigation.

❏  Complete all written reports as soon as possible and in serious cases by the end of shift. Initial and supplemental reports of the incident should include but not be limited to the following information:

   • Date and time of arrival at the scene
   • Relevant weather or situational conditions and observations upon arrival at the scene (CALEA 5th ed. standard 42.2.1a)
   • Circumstances of how the crime was discovered and reported
   • Identity of other officers or emergency personnel at the scene
   • Description of injuries sustained by victim(s) and others
❏ • Physical evidence present at the scene and the officer(s) responsible for its collection and storage .(CALEA 5th ed. standard 42.2.1b)
   • Names, addresses, telephone numbers of victims, witnesses, and suspects
   • Spontaneous statements made by victims, witnesses, or suspects (CALEA 5th ed. 42.2.2a)
❏ • Results of interviews with complainants, victims, or witnesses to include the identity or description of suspects . (CALEA 5th ed. standard 42.2.1d)
   • Diagrams, sketches, photographs, videotape or audio recordings taken, and the identity of the recording officer
   • Details relating to search warrants
   • Property damage
   • Stolen property descriptions, serial numbers or other markings or identifiable characteristics as available
   • Time the crime scene was released
   • Recommendations for further investigation or action

---

ANDERSON-326

7.1.2      Figure 2: Confidentiality and Nondisclosure Agreement (Form APD 249)

---

**Atlanta Police Department**
**Confidentiality and Nondisclosure Agreement**

The undersigned employee, _____, of the City of Atlanta, Atlanta Police Department (hereafter "Department") acknowledges the following:

    A.   Department has employed employee to devote his or her full time, attention, and energies to the business of the Department and to use his or her best effort, skills, and abilities in performing the specific duties of such employment

    B.   APD.SOP.2010 "Work Rules", section 4.1.14 states that "Employees shall treat as confidential the business, activities, files, and reports of the Department. They must not impart knowledge of the above except to those who have a "right to know". Employees shall also comply with any nondisclosure agreement(s) in which they have entered".

    C.   As a consequence of the employee's assignment, employee shall have access to information not generally known to the general public or to other employees within the Department. It is the policy of the Department that all such information remain confidential.

In consideration of the matters described above, and of the mutual benefits and obligations set forth in this agreement, the parties agree as follows:

    A.   Employee shall not at any time, during or after the period of his or her employment with the Department, directly or indirectly use, disseminate, or disclose to any person, firm, or other entity for any purpose whatsoever, any information that is not generally known to the general public and/or other employees of the Department, which was disclosed to the employee or known by the employee as a consequence of or through his or her employment with the Department.

    B.   Employee agrees that section (A) shall not be construed to prevent the disclosure of information contemplated herein in the performance of his or her duties as an employee or as required by the applicable law, regulatory authority, recognized subpoena power, or any court of competent jurisdiction.

    C.   Employees shall hold in a fiduciary capacity for the benefit of the Department all information described in (A) above.

    D.   Employee agrees to return to employer all documents, records, notebooks, audio tapes, video tapes, pictures, memory storage device, or any other repository of information or property containing information described in (A), including all copies of such items, upon request of the employer.

    E.   Employee acknowledges that the time, scope, and geographic area and all other provisions of this acknowledgement are reasonable under the circumstances of the employee's assignment. Employee further acknowledges that if, despite the express agreement of the employee and employer, a court holds any portion of this acknowledgement unenforceable for any reason, that the maximum restrictions of time, scope, and geographic area as determined by the court shall be substituted for those restrictions held unenforceable.

By signing below, employee acknowledges that a breach of this Confidentiality and Nondisclosure Agreement:

    A.   Shall be a violation of APD.SOP.2010 "Work Rules", section 4.1.14;

    B.   Shall subject the employee to investigation and disciplinary action in accordance with APD.SOP.2020 "Disciplinary Process";

    C.   May result in other administrative, civil, and/or criminal action.

Acknowledged:

_____    _____    _____
    Employee Signature        Unique ID               Date

_____    _____    _____
    Supervisor Signature      Unique ID               Date

Form APD-249

---

ANDERSON-327

| | | |
|---|---|---|
| Atlanta Police Department<br>Policy Manual |  | Standard Operating<br>Procedure |
| Effective Date<br>May 30, 2013 | | APD.SOP.2011<br>General Conduct |

Applicable To: All employees

Approval Authority:  Chief George N. Turner

Signature:  Signed by GNT                                        Date Signed:  6/4/13

Table of Content

1.      PURPOSE                                              1

2.      POLICY                                               1

3.      RESPONSIBILITIES                                     1

4.      ACTION                                               1
4.1.2   General Considerations                               2
4.1.3   Telephone calls                                      2
4.1.4   Responding to Telephone Calls and Mail               2
4.1.6   Messages                                             3

4.1.7   Urgent Communications                                3
4.1.8   E-mail                                               3
4.2     Use of Tobacco or Tobacco Products                   4
4.3     Cellular Phone Use while on Duty                      4
4.4     Audio, Video or Photographic Recording Devices        4

5.      DEFINITIONS                                          4

6       CANCELLATIONS                                        5

7.      REFERENCES                                           5

1.      PURPOSE

This written directive establishes the guidelines and operating procedures for all departmental employees while interacting with each other and the public at large.

2.      POLICY

Employees will conduct themselves professionally and courteously when answering the telephone or greeting visitors at Departmental facilities.  This procedure includes interactions with fellow employees and with members of the public.  Employees will make every effort to provide needed assistance without rudeness or undue delay.

3.      RESPONSIBILITIES

3.1     Division commanders will monitor their subordinates' interaction with other employees and with the public to ensure that this procedure is followed.

3.2     Supervisors will enforce this procedure with their subordinates.  They will set the standard for courtesy and provide a model for their subordinates to emulate.

3.3     Employees will conduct themselves professionally and courteously, to promote good public relations and to project a positive image.

4.      ACTION

4.1     Office Courtesy

4.1.1   Supervisors will ensure that work sites are staffed and telephones are answered during the working hours of the work site, unless approved otherwise by the division commander.

ANDERSON-328




Atlanta Police Department Policy Manual
APD.SOP.2011
General Conduct

**4.1.2      General Considerations**

1. Employees will make every effort to answer each call and greet each visitor in a courteous and efficient manner.  The employee greeting the visitor or caller will attempt to handle the request personally, but if the employee is unable to supply the requested information or service, he or she will make sure that the office or person to whom he or she refers the call is the appropriate one.

2. Answer all calls and greet all visitors immediately.

3. Do not use slang or profanity.

4. Keep current Department and City government telephone listings and a message pad at each telephone location.

**4.1.3      Telephone calls**

1. Greet callers courteously with a statement identifying the work site and the title and name of the person answering.  For example, "Good morning, this is the Corporate Services Section, Ms. Holmes speaking."  Or, "Atlanta Police, Zone One, Sergeant Jones speaking."

2. If the person asked for is unavailable, offer to either take a message or allow them to leave a voicemail. If it is necessary that the caller must wait place the caller on hold.  If the call has not been picked up after a reasonable time, ask if the caller wants to continue holding or to leave a message.

3. If it is necessary to transfer the call, inform the caller that he or she is being transferred and state the office and telephone number to which the call is being transferred.  Stay on the line to be sure that the call goes through correctly.

4. Personal information about an employee will not be given out over the phone. Home phone numbers or addresses are not to be released outside the chain of command unless approved by a supervisor.  If the caller identifies himself or herself as an employee of the Department and wants this personal information, refer him or her to the Personnel Services Unit.

**4.1.4      Responding to Telephone Calls and Mail**

1. When possible, requests for information or action by telephone will be responded to immediately.  When the person receiving the call must take a message for the intended recipient, the message must be thorough and include a callback number and the date and time it was taken.  The message must be delivered and responded to within 2 business days of the original call.

2. The section commander or designee will return telephone calls within twenty-four (24) hours.

3. Requests for information or action by mail or fax will be responded to within three business days. These requests will be logged, indicate the date of receipt, to whom forwarded for response, and the date of response.

ANDERSON-329



Atlanta Police Department Policy Manual
APD.SOP.2011
General Conduct



    4.    All sections will maintain a log in which all incoming telephone calls and written correspondences are entered, which will be kept at the work site for at least 12 months.

    5.    The section commander will review the log to ensure compliance.

    6.    The log will contain the following:

        a.    Date of correspondence

        b.    Time received

        c.    Identification of correspondent

            1.    Name

            2.    Telephone Number

        d.    Subject matter

        e.    Action taken

**4.1.5**    **Visitors**

    1.    Greet visitors courteously, and call the appropriate staff member on the intercom to notify them of the visitor.  If the staff member is unavailable, offer to take a message or find someone else who can help him or her.  If there will be a wait, estimate how long it will be and offer the visitor a seat.

    2.    If a visitor must be referred to another office, be sure that the directions are clear.  If the destination is in the same building, consider escorting the visitor to minimize confusion.

**4.1.6**    **Messages**

Take a full message, with the name of the caller or visitor, his or her organization and telephone number, the date and time, and any message the caller or visitor wants to relay.  Sign or initial the message.  Put the message where the intended recipient will readily see it or deliver the message.

**4.1.7**    **Urgent Communications**

Be responsive to the urgency of visitors and callers; if the matter is urgent, ask them if they need to interrupt a meeting or page the person they need.  It is generally appropriate to interrupt a meeting for the person's supervisor, but ask the person's supervisor first.  If a call or visit is urgent, make extra effort to find the appropriate person.

**4.1.8**    **E-mail**

City e-mail accounts will be checked by all employees at least once within each 24-hour period, during the course of his or her shift or as frequently as the employees' assignment dictates.  Employees will immediately check his or her city e-mail account upon return from approved leave i.e. vacation, sick leave etc.

ANDERSON-330

 

Atlanta Police Department Policy Manual
APD.SOP.2011
General Conduct

4.2         Use of Tobacco or Tobacco Products

4.2.1       Employees will not use any tobacco or tobacco products while interacting with or in the view of the general public.

4.2.2       Use of Tobacco in Department Facilities

1.   Use of any type of tobacco product is prohibited in any building, office, work area, or other structure, which is owned, leased, or in any manner operated under the control of the Atlanta Police Department.

2.   All employees and visitors will abide by the posted designations.  Persons who refuse compliance may be charged with violating Section 106-9 of the City of Atlanta Code or Section 16-12-2 of the Criminal Code of Georgia.

4.2.3       Use of any type of tobacco product is prohibited in vehicles that are owned, leased, or in any manner operated under the control of the Atlanta Police Department.

4.3         Cellular Phone Use while on Duty

4.3.1       Employees are authorized to use cell phones to conduct Departmental business.

1.   Employees will not use cellular telephones to conduct Departmental business that should otherwise be broadcast over the radio.

2.   Cellular telephones may be used to allow additional communication between employees but does not relieve the officer from using the radio for disseminating and documenting information.

4.3.2       Employees will not use a cellular phone for personal business while interacting with the general public.

4.3.3       Employees will not use a cellular phone, with or without a hands free option, while directing traffic.

4.4         Audio, Video or Photographic Recording Devices

4.4.1       All employees shall be prohibited from interfering with a citizen's right to record police activity by photographic, video, or audio means. This prohibition is in effect only as long as the recording by the citizen does not physically interfere with the performance of an officer's duties.

5.          DEFINITIONS

5.1         Departmental Business: Any communication related to the affairs of the Departments and or the City to include but not limited to the following: investigations, personnel supervision, labor relations, bureau, division, section and unit administration, manpower allocation and activities, etc.

ANDERSON-331



Atlanta Police Department Policy Manual
APD.SOP.2011
General Conduct



6        CANCELLATIONS

         APD.SOP.2011 R1 "General Conduct," effective April 15, 2012

7.       REFERENCES

         APD.SOP.2010 Work Rules

ANDERSON-332

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __CID__                Section __SES__                Unit __HIDTA__

Items distributed: APD.SOP.2011 General Conduct.

APD.SOP.308Ø General Procedures

_Given by Lt. R. Moorman_

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. Reginald Moorman | | 12-17-14 |
| Sgt. John Dixon | | 12-17-14 |
| Sgt. Edgar Irish | | 12-17-14 |
| Inv. Charles Cook | | 12-17-14 |
| Inv. Jay Criger | | 12.17.2014 |
| Inv. Scott Duncan | | 12-18-14 |
| Inv. Joe Franklin | | 12-18-14 |
| Inv. Jason Gilden | | 12-18-14 |
| Inv. Alberto Gonzalez | | 12/18/2014 |
| Inv. Corey Gorgan | | 12/18/2014 |
| Inv. Outhai Keovongkot | | 12/18/14 |
| Inv. Marvin Ogelsby | | 12-18-14 |
| Inv. Adam Plummer | | 12-18-14 |
| Inv. Keovongsa Siharath | | 12-17-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-333

# Printed Matter Control Sheet

Division <u>C.I.D.</u>         Section <u>S.E.S.</u>         Unit <u>Homeland Security Unit</u>

Items distributed: <u>APD.SOP.3080</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| Bates, M. Lt. | | 12 - 8 - 2014 |
| Burras, W Sgt | | 12 Dec 12 |
| Hill, K. Sgt. | | 12-8 2014 |
| Condland, M | | 12/16/14 |
| Dupree, C | | 8 Dec 14 |
| Mercier, G | | 8 DEC 14 |
| Reyes, J. | | 12/16/14 |
| Taylor, M | | 9 Dec 14 |
| Chambers, T | | 12/16/14 |
| Jackson, P | | 12/10/2014 |
| Paige, F | | 12/8/14 |
| Smith, A | | 12/8/14 |
| Teague, J | | 12/10/14 |
| Wilson, B | | 12 - 8 - 2014 |
| Beard, L | | 12 - 8 - 14 |
| Monkus, B | | 12-16-14 |
| Richardson, L | | 12-10-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-334

Division __CID__          Section __SES__          Unit __Narcotics__

Items distributed: __APD.SOP.3080 General Procedures__

(distributed by Departmental e-mail)

(distributed 12-8-14)

| Employee's name | Employee's signature | Date |
|---|---|---|
| Sgt. R. Dingle | | 12/9/14 |
| Sgt. C. Peek | | 12-9-14 |
| Sgt. W. Ricker | | 12-17-14 |
| Sgt. E. Ridge | | 12.9.14 |
| Sgt. J. Smith | | 12-12-14 |
| Inv. K. Backmon | | 12-4-14 |
| Inv. S. Bibbs | | 12/9/14 |
| Inv. R. Burks | | 12/9/14 |
| Inv. R. Carter | | 12-10-14 |
| Inv. N. Chimino | | 12-18-14 |
| Inv. T. Diggs | | 12/9/14 |
| Inv. B. Ernest | | 12-11-14 |
| Inv. S. Farais | | 12/9/14 |
| Inv. C. Golphin | | 12-12-14 |
| Inv. J. Heeb | | 12/9/14 |
| Inv. R. Jackson | | 12-10-14 |
| Inv. G. Krylowski | | 12-12-14 |
| Inv. A. Lowe | | 12-17-14 |
| Inv. S. McCormick | | 12/9/14 |
| Inv. L. Moore | | 12-9-14 |
| Inv. M. Noble | | 12-9-14 |
| Inv. M. Olson | EXTENDED LEAVE | |
| Inv. A Patterson | | 12/9/14 |

Form APD 726 Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-335

Division __CID__          Section __SES__          Unit __Narcotics__

Items distributed: __APD.SOP.3080 General Procedures__

(distributed by Departmental e-mail) _____

(distributed 12-8-14) _____

| Employee's name | Employee's signature | Date |
|---|---|---|
| Inv. D. Perry | | 12/4/14 |
| Inv. D. Pickering | | 12/9/14 |
| Inv. V. Pitts | | 12-16-14 |
| Inv. B. Ricker | | 12/9/14 |
| Inv. J. Segura | | 12/9/14 |
| Inv. I. Streeter | | 12-12-14 |
| Inv. P. Trotta | | 12-12-14 |
| Inv. K. Turnier | | 12-11-14 |
| SPO C. Carson | | 12/5/14 |
| Inv. J. Andresen | | 12-17-14 |

LT. R. MASON DISCUSSED THIS S.O.P. WITH EACH GROUP OF PEOPLE WHO SIGNED ON THE RESPECTIVE DAYS

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-336

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division CID      Section SES      Unit Vice/Violent Crime TF

Items distributed: General Procedures APD SOP 3080

General Conduct APD SOP 2011

Add your employee ID ✓

| Employee's name | Employee's signature | Date |
| --- | --- | --- |
| | | 12/10/2014 |
| Lt Jeff Cantin 2907 | | 12-10-14 |
| Sgt. Jessica Bruce 4035 | | 12-10-14 |
| S.A. Keith Israel 4214 | | 12-10-14 |
| Major Barbara Cavender 1027 | BCav | 12-10-14 |
| Ofc. Christopher Brown 5411 | | 12-10-14 |
| Ofc Lascelles Simpson 5299 | | 12/10/14 |
| S. D. Williams 5855 | | 10 Dec. 14 |
| Inv. Peter Harris 4771 | | 12/10/14 |
| Inv. William Kellner 4565 | | 12/10/14 |
| Inv. S.E. Dunbar 4997 | | 12/10/14 |
| Ofc. Justin M. Hensel 5224 | | 12/10/14 |
| OFC. MATTHEW J. GILSTRAP 5630 | | 12/10/14 |
| Ofc. Gordon Payne 5290 | | 12/10/14 |
| Ofc. William Wilson 6027 | | 12/10/14 |
| Ofc. Jeff Leach 5268 | | 12-10-14 |
| Ofc. V. Wise 5265 | | 12-10-14 |
| Ofc. J. Hartsfield 5133 | | 12-15-14 |
| Ofc. J. Ayala 5441 | | 12/15/14 |
| Inv. K. Riester 4330 | K. Riester | |

Lt Cantin performed the roll call training on Dec 10, 2014 and then followed up with the two that were on vacation.

Form APD 726 Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-337

ATLANTA POLICE DEPARTMENT
PRINTED MATTER CONTROL SHEET

*APP·S·O·P·2011*

**DIVISON:** **CID**       **SECTION:** **SES**       **UNIT:** **APEX**
**ITEM DISTRIBUTED:** "**General Conduct**"       "**General Procedures**"

| LAST | FIRST | DATED RECEIVED | INITIALS |
|------|-------|----------------|----------|
| Patterson | James | 12-18-14 | |
| Lester | Val | 12/8/14 | |
| Ruben | Frank | 12/18/14 | F. Nutu |
| Turner | Frudge  FURDGE | 12-16-14 | |
| Walker | Ronald | 12/18/14 | |
| Alvarez | Alex | | |
| Basile | Jacob | 12/16/14 | |
| Blaise | Christopher | 12/16/14 | |
| Bleifeld | Ari | 12/18/14 | |
| Cornelius | Johnathan | 12-16-14 | |
| Ernest | Brian | 12-18-14 | |
| Fisher | Brittany | 12-18-14 | |
| Fisher | Kenneth | 12/18/2014 | |
| Fluellen | Olympia | SENT IN WITH | Rasmussen |
| Garner | Gabriel | 12-16-14 | |
| Godwin | Robert | 12-18-14 | |
| Griffin | Andrew | 12-16-14 | |
| Hayes | Aaron | 12/16/14 | |
| Jones | Richard | 12-9-14 | |
| Johnson | William | 17-18/14 | |
| Khoury | Kareem | 12/18/14 | |
| Miller | Robert | 12/4/14 | |
| Nelson | Jamie | 12.9.14 | |
| Parent | Nichelle | 12-16-14 | |
| Phelps | Maurice | 12-18-14 | |
| Pucci | John | 12-18-14 | |
| Salazar | Darwin | 12/16/14 | |
| Sperl | Richard | 12/18/14 | |
| Stephens | Runako | 12/18/14 | |
| Toler | Darrin | 12-18-14 | |
| Weber | William | 12-9-14 | |
| Whitefield | Daryn | 12-16-14 | |
| Worrell | David | 12-16-14 | |
| Young | John | 12-16-14 | |
| Hardin-Dowd | Shontel | 12-9-14 | |
| Beverly | Robert | 12-16-14 | |

PMC1 12/9/14

ANDERSON-338

## ATLANTA POLICE DEPARTMENT
### Printed Matter Control Sheet

Division __CID__          Section __SES__          Unit __LICENSE & PERMITS__

Items distributed: __APD.SOP.3080 GENERAL CONDUCT__
__2011__

| Employee's name | Employee's signature | Date |
|---|---|---|
| LT. R. GREER — Gave out @ Roll call | R. Robt Greer | 12/8/14 |
| SGT. B BURNS | | 12/8/14 |
| SGT. K. WALLS | Sgt K Walls | 12-9-14 |
| INV. E. MILES | Bob Miles | 12/9/14 |
| INV. Y. TYUS | Y Tyus | 12/18/14 |
| INV. R. SCANDRICK | R Scandrick | 12/10/2014 |
| INV. M. GEURIN | M Geurin Jr | 12-09-14 |
| INV. G. SMITH | | 12-9-14 |
| OFC. R. MCCLURE | | 12-9-14 |
| OFC. L. CANNON | L Cannon | |
| OFC. R. ANAYA | R Anaya | 12-09-14 |
| INSP. T. CANTRELL | T Cantrell | 12-12-14 |
| INSP. F. GRAHAM | F Graham | 12-12-14 |
| INSP. J. SNEED | | 12-11-14 |
| INSP. E. SHROPSHIRE | | 12-10-14 |
| INSP. F. ARMOND | F Armond | 12.9.2014 |
| MS. C. WHEELER | Connie Wheeler | 12-12-14 |
| MS. B. COVEN | Britan Coven | 12-9-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-339

404 699 0452

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division <u>CID</u>            Section <u>SES</u>            Unit <u>FBTF/PAWN DESK</u>

Items distributed: <u>APD.SOP.2011 General Conduct</u>

<u>General Procedures APD.SOP.3080</u>

<u>Lt. Dan Rasmussen — Gave out @ Rollcall</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| Rasmussen, Dan Lt. | Dan Rasmussen | 12/10/14 |
| Terrance, Capitol | | 12-10-14 |
| Fluellen, Olympia | B. Fluellen | 12/10/14 |
| Agan, Danny | | 12/10/14 |
| Flores, Angela | Angela J. (Flores) | 12/10/14 |
| Allen, Ken | | 12.17.2014 |

Form APD 726   Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-340

Printed Matter Control Sheet

Division <u>CID</u>          Section <u>SES</u>          Unit <u>Gang Unit</u>

Items distributed: <u>General Conduct APD.SOP.2011</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lieutenant David Wilson | | 12/08/2014 |
| Sergeant Archie Ezell | | 12/15/14 |
| Sergeant Roland Thomas | | 12/15/14 |
| Inv. M. Belknap | | 12/9/14 |
| Inv. S. Berhalter | | 12/9/14 |
| Inv. O. Curry | | 12/08/2014 |
| Inv. M. Conner | | 12/08/14 |
| Inv. G. Dabney - Admin | | 12/15/14 |
| Inv. L. Gaither | | 12-8-14 |
| Inv. T. Dennis | | 12/8/14 |
| Ofc. M. Davis | | 12/16/14 |
| Inv. W. Murdock | | 12/10/14 |
| Inv. J. Sobocinski | | 12-8-14 |
| Ofc. C. Kettel | | 12-9-14 |
| Ofc. C. Murphy | | 12-15-14 |
| Ofc. R. Price | | 12/17/14 |
| _INV L. Underwood_ | | 12/9/14 |

_Lieutenant Wilson provided the training covering SOP, 2011 with a focus on 4.4._

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-341

[ Administration ] [ Personnel ] [ General Operations ] [ Field Operations ] [ Criminal Investigations ]
[ Support Operations ] [ Special Orders ] [ Command Memo ] [ Library ] [ Search ] [ Home ]

| | | Standard Operating Procedure |
|---|---|---|
| Atlanta Police Department Policy Manual | | |
| | | APD.SOP.2011 General Conduct |
| Effective Date May 30, 2013 | | |

Applicable To: All employees

Approval Authority: Chief George N. Turner

Date Signed: 6/4/13

Signature: Signed by GNT

Table of Content

1. PURPOSE

2. POLICY

3. RESPONSIBILITIES

4. ACTION
4.1.2 GENERAL CONSIDERATIONS
4.1.3 TELEPHONE CALLS
4.1.4 RESPONDING TO TELEPHONE CALLS AND MAIL
4.1.6 MESSAGES

4.1.7 URGENT COMMUNICATIONS
4.2 Use of Tobacco or Tobacco Products
4.3 Cellular Phone Use while on Duty
4.4 Audio, Video or Photographic Recording Devices

5. DEFINITIONS

6 CANCELLATIONS

7. REFERENCES

## 1. PURPOSE

This written directive establishes the guidelines and operating procedures for all departmental employees while interacting with each other and the public at large.

## 2. POLICY

Employees will conduct themselves professionally and courteously when answering the telephone or greeting visitors at Departmental facilities. This procedure includes interactions with fellow employees and with members of the public. Employees will make every effort to provide needed assistance without rudeness or undue delay.

## 3. RESPONSIBILITIES

3.1 Division commanders will monitor their subordinates' interaction with other employees and with the public to ensure that this procedure is followed.

3.2 Supervisors will enforce this procedure with their subordinates. They will set the standard for courtesy and provide a model for their subordinates to emulate.

3.3 Employees will conduct themselves professionally and courteously, to promote good public relations and to project a positive image.

## 4. ACTION

4.1 Office Courtesy

4.1.1 Supervisors will ensure that work sites are staffed and telephones are answered during the working hours of the work site, unless approved otherwise by the division commander.

4.1.2 General Considerations

1. Employees will make every effort to answer each call and greet each visitor in a courteous and efficient manner. The employee greeting the visitor or caller will attempt to handle the request personally, but if the employee is unable to supply the requested information

ANDERSON-342

or service, he or she will make sure that the office or person to whom he or she refers the call is the appropriate one.

2. Answer all calls and greet all visitors immediately.
3. Do not use slang or profanity.
4. Keep current Department and City government telephone listings and a message pad at each telephone location.

### 4.1.3 Telephone calls

1. Greet callers courteously with a statement identifying the work site and the title and name of the person answering. For example, "Good morning, this is the Corporate Services Section, Ms. Holmes speaking." Or, "Atlanta Police, Zone One, Sergeant Jones speaking."
2. If the person asked for is unavailable, offer to either take a message or allow them to leave a voicemail. If it is necessary that the caller must wait place the caller on hold. If the call has not been picked up after a reasonable time, ask if the caller wants to continue holding or to leave a message.
3. If it is necessary to transfer the call, inform the caller that he or she is being transferred and state the office and telephone number to which the call is being transferred. Stay on the line to be sure that the call goes through correctly.
4. Personal information about an employee will not be given out over the phone. Home phone numbers or addresses are not to be released outside the chain of command unless approved by a supervisor. If the caller identifies himself or herself as an employee of the Department and wants this personal information, refer him or her to the Personnel Services Unit.

### 4.1.4 Responding to Telephone Calls and Mail

1. When possible, requests for information or action by telephone will be responded to immediately. When the person receiving the call must take a message for the intended recipient, the message must be thorough and include a callback number and the date and time it was taken. The message must be delivered and responded to within 2 business days of the original call.
2. The section commander or designee will return telephone calls within twenty-four (24) hours.
3. Requests for information or action by mail or fax will be responded to within three business days. These requests will be logged, indicate the date of receipt, to whom forwarded for response, and the date of response.
4. All sections will maintain a log in which all incoming telephone calls and written correspondences are entered, which will be kept at the work site for at least 12 months.
5. The section commander will review the log to ensure compliance.
6. The log will contain the following:
   a. Date of correspondence
   b. Time received
   c. Identification of correspondent
      1. Name
      2. Telephone Number
   d. Subject matter
   e. Action taken

### 4.1.5 Visitors

1. Greet visitors courteously, and call the appropriate staff member on the intercom to notify them of the visitor. If the staff member is unavailable, offer to take a message or find someone else who can help him or her. If there will be a wait, estimate how long it will be and offer the visitor a seat.
2. If a visitor must be referred to another office, be sure that the directions are clear. If the destination is in the same building, consider escorting the visitor to minimize confusion.

### 4.1.6 Messages

Take a full message, with the name of the caller or visitor, his or her organization and telephone number, the date and time, and any message the caller or visitor wants to relay. Sign or initial the message. Put the message where the intended recipient will readily see it or

deliver the message.

4.1.7 Urgent Communications

Be responsive to the urgency of visitors and callers; if the matter is urgent, ask them if they need to interrupt a meeting or page the person they need. It is generally appropriate to interrupt a meeting for the person's supervisor, but ask the person's supervisor first. If a call or visit is urgent, make extra effort to find the appropriate person.

4.1.8 E-mail

City e-mail accounts will be checked by all employees at least once within each 24-hour period, during the course of his or her shift or as frequently as the employees' assignment dictates. Employees will immediately check his or her city e-mail account upon return from approved leave i.e. vacation, sick leave etc.

4.2 Use of Tobacco or Tobacco Products

4.2.1 Employees will not use any tobacco or tobacco products while interacting with or in the view of the general public.

4.2.2 Use of Tobacco in Department Facilities

1. Use of any type of tobacco product is prohibited in any building, office, work area, or other structure, which is owned, leased, or in any manner operated under the control of the Atlanta Police Department.
2. All employees and visitors will abide by the posted designations. Persons who refuse compliance may be charged with violating Section 106-9 of the City of Atlanta Code or Section 16-12-2 of the Criminal Code of Georgia.

4.2.3 Use of any type of tobacco product is prohibited in vehicles that are owned, leased, or in any manner operated under the control of the Atlanta Police Department.

4.3 Cellular Phone Use while on Duty

4.3.1 Employees are authorized to use cell phones to conduct Departmental business.

1. Employees will not use cellular telephones to conduct Departmental business that should otherwise be broadcast over the radio.
2. Cellular telephones may be used to allow additional communication between employees but does not relieve the officer from using the radio for disseminating and documenting information.

4.3.2 Employees will not use a cellular phone for personal business while interacting with the general public.

4.3.3 Employees will not use a cellular phone, with or without a hands free option, while directing traffic.

4.4 Audio, Video or Photographic Recording Devices

4.4.1 All employees shall be prohibited from interfering with a citizen's right to record police activity by photographic, video, or audio means. This prohibition is in effect only as long as the recording by the citizen does not physically interfere with the performance of an officer's duties.

5. DEFINITIONS

5.1 Departmental Business: Any communication related to the affairs of the Departments and or the City to include but not limited to the following: investigations, personnel supervision, labor relations, bureau, division, section and unit administration, manpower allocation and activities, etc.

6 CANCELLATIONS

APD.SOP.2011 R1 "General Conduct," effective April 15, 2012

7. REFERENCES

APD.SOP.2010 Work Rules

ANDERSON-344

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __CID__          Section __SES__          Unit __HIDTA__

Items distributed: __APD.SOP.2011 General Conduct.__

APD.SOP.3080 General Procedures          _Given by Lt. R. Moorman_

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. Reginald Moorman | _[signature]_ | 12-17-14 |
| Sgt. John Dixon | _[signature]_ | 12-17-14 |
| Sgt. Edgar Irish | _[signature]_ | 12-17-14 |
| Inv. Charles Cook | _[signature]_ | 12-17-14 |
| Inv. Jay Criger | _[signature]_ | 12-17-2014 |
| Inv. Scott Duncan | _[signature]_ | 12-18-14 |
| Inv. Joe Franklin | _[signature]_ | 12-18-14 |
| Inv. Jason Gilden | _[signature]_ | 12-18-14 |
| Inv. Alberto Gonzalez | _[signature]_ | 12/18/2014 |
| Inv. Corey Gorgan | _[signature]_ | 12/18/2014 |
| Inv. Outhai Keovongkot | _[signature]_ | 12/18/14 |
| Inv. Marvin Ogelsby | _[signature]_ | 12-18-14 |
| Inv. Adam Plummer | _[signature]_ | 12-18-14 |
| Inv. Keovongsa Siharath | _[signature]_ | 12-17-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-345

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division <u>C.I.D.</u>     Section <u>S.E.S.</u>     Unit <u>Homeland Security Unit</u>

Items distributed: <u>APD.SOP.2011</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| Bates, M. Lt. | | 12-8-2014 |
| Burras, W Sgt | | 12-9-14 |
| Hill, K. Sgt. | | 8/DEC/2014 |
| Condland, M | | 12/14/14 |
| Dupree, C | | 18 Dec 14 |
| Mercier, G | | 8 DEC 14 |
| Reyes, J. | J. Reyes | 12-16-14 |
| Taylor, M | | 9 Dec 14 |
| Chambers, T | | 12.16.14 |
| Jackson, P | | 12/10/14 |
| Paige, F | | 12/8/14 |
| Smith, A | A Smith | 12/8/14 |
| Teague, J | | 12/10/14 |
| Wilson, B | | 12.8.2014 |
| Beard, L | | 12.9.14 |
| Monkus, B | B. Monkus | 12.16.14 |
| Richardson, L | | 12-10-14 |

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __CID__                Section __SES__                Unit __Narcotics__

Items distributed: __APD.SOP.2011 General Conduct__

(distributed by Departmental e-mail)

(distributed 12-3-14)

| Employee's name | Employee's signature | Date |
|---|---|---|
| Sgt. R. Dingle | *(signature)* | 12/4/14 |
| Sgt. C. Peek | *(signature)* | 12-9-14 |
| Sgt. W. Ricker | *(signature)* | 12-17-14 |
| Sgt. E. Ridge | *(signature)* | 12.9.14 |
| Sgt. J. Smith | *(signature)* | 12-4-14 |
| Inv. K. Backmon | *(signature)* | 12-9-14 |
| Inv. S. Bibbs | *(signature)* | 12/4/14 |
| Inv. R. Burks | *(signature)* R. Burks | 12/4/14 |
| Inv. R. Carter | *(signature)* | 12-4-14 |
| Inv. N. Chimino | *(signature)* | 12-8-14 |
| Inv. T. Diggs | *(signature)* | 12/08/14 |
| Inv. B. Ernest | *(signature)* | 12-11-14 |
| Inv. S. Farais | *(signature)* | 12/9/14 |
| Inv. C. Golphin | *(signature)* | 12-12-14 |
| Inv. J. Heeb | *(signature)* | 12/4/14 |
| Inv. R. Jackson | *(signature)* | 12-9-14 |
| Inv. G. Krylowski | *(signature)* | 12-12-14 |
| Inv. A. Lowe | *(signature)* | 12/04/14 |
| Inv. S. McCormick | *(signature)* | 12/4/14 |
| Inv. L. Moore | *(signature)* | 12-9-14 |
| Inv. M. Noble | *(signature)* | 12-10-14 |
| Inv. M. Olson | EXTENDED LEAVE | |
| Inv. A Patterson | *(signature)* S. Patterson | 12/4/14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-347

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __CID__      Section __SES__      Unit __Narcotics__

Items distributed: __APD.SOP.2011 General Conduct__

(distributed by Departmental e-mail)

(distributed 12-3-14)

| Employee's name | Employee's signature | Date |
|---|---|---|
| Inv. D. Perry | | 12.4.14 |
| Inv. D. Pickering | | 12/4/14 |
| Inv. V. Pitts | | 12-17-14 |
| Inv. B. Ricker | | 12/9/14 |
| Inv. J. Segura | | 12/9/14 |
| Inv. I. Streeter | | 12-12-14 |
| Inv. P. Trotta | | 12-12-14 |
| Inv. K. Turnier | | 12/1/14 |
| SPO C. Carson | | 12/9/14 |
| Inv. J. Andresen | | 12-17-14 |

_Lt. R. A. Mason Discussed This SOP With Each Group Of People Who Signed On The Respective Date_

[ Administration ] [ Personnel ] [ General Operations ] [ Field Operations ] [ Criminal Investigations ]
[ Support Operations ] [ Special Orders ] [ Command Memo ] [ Library ] [ Search ] [ Home ]

| | | |
|---|---|---|
| Atlanta Police Department<br>Policy Manual |  | Standard Operating<br>Procedure |
| Effective Date<br>May 30, 2013 | | APD.SOP.2011<br>General Conduct |

Applicable To: All employees

Approval Authority: Chief George N. Turner

Signature: Signed by GNT                                          Date Signed: 6/4/13

Table of Content

1. PURPOSE

2. POLICY

3. RESPONSIBILITIES

4. ACTION
4.1.2 GENERAL CONSIDERATIONS
4.1.3 TELEPHONE CALLS
4.1.4 RESPONDING TO TELEPHONE CALLS AND MAIL
4.1.6 MESSAGES

4.1.7 URGENT COMMUNICATIONS
4.2 Use of Tobacco or Tobacco Products
4.3 Cellular Phone Use while on Duty
4.4 Audio, Video or Photographic Recording Devices

5. DEFINITIONS

6 CANCELLATIONS

7. REFERENCES

## 1. PURPOSE

This written directive establishes the guidelines and operating procedures for all departmental employees while interacting with each other and the public at large.

## 2. POLICY

Employees will conduct themselves professionally and courteously when answering the telephone or greeting visitors at Departmental facilities. This procedure includes interactions with fellow employees and with members of the public. Employees will make every effort to provide needed assistance without rudeness or undue delay.

## 3. RESPONSIBILITIES

3.1 Division commanders will monitor their subordinates' interaction with other employees and with the public to ensure that this procedure is followed.

3.2 Supervisors will enforce this procedure with their subordinates. They will set the standard for courtesy and provide a model for their subordinates to emulate.

3.3 Employees will conduct themselves professionally and courteously, to promote good public relations and to project a positive image.

## 4. ACTION

4.1 Office Courtesy

4.1.1 Supervisors will ensure that work sites are staffed and telephones are answered during the working hours of the work site, unless approved otherwise by the division commander.

4.1.2 General Considerations

1. Employees will make every effort to answer each call and greet each visitor in a courteous and efficient manner. The employee greeting the visitor or caller will attempt to handle the request personally, but if the employee is unable to supply the requested information

ANDERSON-349

or service, he or she will make sure that the office or person to whom he or she refers the call is the appropriate one.

2. Answer all calls and greet all visitors immediately.
3. Do not use slang or profanity.
4. Keep current Department and City government telephone listings and a message pad at each telephone location.

4.1.3 Telephone calls

1. Greet callers courteously with a statement identifying the work site and the title and name of the person answering. For example, "Good morning, this is the Corporate Services Section, Ms. Holmes speaking." Or, "Atlanta Police, Zone One, Sergeant Jones speaking."
2. If the person asked for is unavailable, offer to either take a message or allow them to leave a voicemail. If it is necessary that the caller must wait place the caller on hold. If the call has not been picked up after a reasonable time, ask if the caller wants to continue holding or to leave a message.
3. If it is necessary to transfer the call, inform the caller that he or she is being transferred and state the office and telephone number to which the call is being transferred. Stay on the line to be sure that the call goes through correctly.
4. Personal information about an employee will not be given out over the phone. Home phone numbers or addresses are not to be released outside the chain of command unless approved by a supervisor. If the caller identifies himself or herself as an employee of the Department and wants this personal information, refer him or her to the Personnel Services Unit.

4.1.4 Responding to Telephone Calls and Mail

1. When possible, requests for information or action by telephone will be responded to immediately. When the person receiving the call must take a message for the intended recipient, the message must be thorough and include a callback number and the date and time it was taken. The message must be delivered and responded to within 2 business days of the original call.
2. The section commander or designee will return telephone calls within twenty-four (24) hours.
3. Requests for information or action by mail or fax will be responded to within three business days. These requests will be logged, indicate the date of receipt, to whom forwarded for response, and the date of response.
4. All sections will maintain a log in which all incoming telephone calls and written correspondences are entered, which will be kept at the work site for at least 12 months.
5. The section commander will review the log to ensure compliance.
6. The log will contain the following:
   a. Date of correspondence
   b. Time received
   c. Identification of correspondent
      1. Name
      2. Telephone Number
   d. Subject matter
   e. Action taken

4.1.5 Visitors

1. Greet visitors courteously, and call the appropriate staff member on the intercom to notify them of the visitor. If the staff member is unavailable, offer to take a message or find someone else who can help him or her. If there will be a wait, estimate how long it will be and offer the visitor a seat.
2. If a visitor must be referred to another office, be sure that the directions are clear. If the destination is in the same building, consider escorting the visitor to minimize confusion.

4.1.6 Messages

Take a full message, with the name of the caller or visitor, his or her organization and telephone number, the date and time, and any message the caller or visitor wants to relay. Sign or initial the message. Put the message where the intended recipient will readily see it or

ANDERSON-350

deliver the message.

4.1.7 Urgent Communications

Be responsive to the urgency of visitors and callers; if the matter is urgent, ask them if they need to interrupt a meeting or page the person they need. It is generally appropriate to interrupt a meeting for the person's supervisor, but ask the person's supervisor first. If a call or visit is urgent, make extra effort to find the appropriate person.

4.1.8 E-mail

City e-mail accounts will be checked by all employees at least once within each 24-hour period, during the course of his or her shift or as frequently as the employees' assignment dictates. Employees will immediately check his or her city e-mail account upon return from approved leave i.e. vacation, sick leave etc.

4.2 Use of Tobacco or Tobacco Products

4.2.1 Employees will not use any tobacco or tobacco products while interacting with or in the view of the general public.

4.2.2 Use of Tobacco in Department Facilities

1. Use of any type of tobacco product is prohibited in any building, office, work area, or other structure, which is owned, leased, or in any manner operated under the control of the Atlanta Police Department.

2. All employees and visitors will abide by the posted designations. Persons who refuse compliance may be charged with violating Section 106-9 of the City of Atlanta Code or Section 16-12-2 of the Criminal Code of Georgia.

4.2.3 Use of any type of tobacco product is prohibited in vehicles that are owned, leased, or in any manner operated under the control of the Atlanta Police Department.

4.3 Cellular Phone Use while on Duty

4.3.1 Employees are authorized to use cell phones to conduct Departmental business.

1. Employees will not use cellular telephones to conduct Departmental business that should otherwise be broadcast over the radio.

2. Cellular telephones may be used to allow additional communication between employees but does not relieve the officer from using the radio for disseminating and documenting information.

4.3.2 Employees will not use a cellular phone for personal business while interacting with the general public.

4.3.3 Employees will not use a cellular phone, with or without a hands free option, while directing traffic.

4.4 Audio, Video or Photographic Recording Devices

4.4.1 All employees shall be prohibited from interfering with a citizen's right to record police activity by photographic, video, or audio means. This prohibition is in effect only as long as the recording by the citizen does not physically interfere with the performance of an officer's duties.

5. DEFINITIONS

5.1 Departmental Business: Any communication related to the affairs of the Departments and or the City to include but not limited to the following: investigations, personnel supervision, labor relations, bureau, division, section and unit administration, manpower allocation and activities, etc.

6 CANCELLATIONS

APD.SOP.2011 R1 "General Conduct," effective April 15, 2012

7. REFERENCES

APD.SOP.2010 Work Rules

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division  CID                    Section  SES                    Unit  Vice/Violent Crime TF

Items distributed:  General Procedures APD SOP 3080

General Conduct APD SOP 2011

| Employee's name | Employee's signature | Date |
|---|---|---|
| ✓ Add your employee ID | | |
| Lt Jeff Cantin   2907 | | 12/10/2014 |
| Sgt. Jessica Bruce 4035 | | 12-10-14 |
| Sgt. Keith Israel 4214 | | 12-10-14 |
| Major Barbara Cavender 1027 | BCav | 12-10-14 |
| Ofc Christopher Brown 5411 | | 12-10-14 |
| Ofc Lascelles Simpson 5299 | | 12-10-14 |
| S. D. Williams 5855 | | 12/10/14 |
| Inv. Peter Harris 4771 | PDH | 10 Dec. 14 |
| Inv. William Kellner 4565 | | 12/10/14 |
| Inv. SE Dunbar 4997 | SDunbar | 12/10/14 |
| Ofc Justin M. Hensal 5224 | | 12/10/14 |
| Ofc. MATTHEW T. GILSTRAP 5630 | | 12/10/14 |
| Ofc. Gordon Payne 5290 | | 12/10/14 |
| Ofc William Wilson 6027 | | 12/10/14 |
| Ofc. Jeff Leach 5268 | | 12/10/14 |
| Ofc. V. Wise 5265 | | 12-10-14 |
| Ofc. J. Hartsfield 5133 | | 12-10-14 |
| Ofc. J. Ayala 5441 | | 12-15-14 |
| Inv. K. Riester 4330 | K. Riester | 12/15/14 |

*Lt Cantin performed the roll call training on Dec 10, 2014 and then followed up with the two that were on vacation.*

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-352

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division <u>OCOP</u>                Section <u>OPS</u>                Unit _____

Items distributed: <u>APD. SOP. 2011 General Conduct</u>

| Employee's name | Employee's signature | Date |
|---|---|---|
| Off. B. Cruz | *(signature)* | 12/8/14 |
| Off. C. Mason | *(signature)* | 12/11/14 |
| Off. M. Stewart | *(signature)* | 12-4-14 |
| Sgt. R. Griffie | *(signature)* | 12/8/14 |
| Inv. D. Haff | *(signature)* | 12/10/14 |
| K. Harmon | *(signature)* | 12/9/14 |
| V.S. Dalton | *(signature)* | 12-8-14 |

Form APD 726 Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-353

## Printed Matter Control Sheet

Division **OCOP**             Section **OPS**             Unit **ADV/IA/INTEG**

Items distributed: APD. SOP.3080 General Procedures

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. J. D. Webb | | 12-9-14 |
| Lt. D. Ferguson | | 12-9-14 |
| Lt. S. Bennett | | 12/9/14 |
| Sgt. A. Lewis | | 12-9-14 |
| Sgt. W. Dean | | 12-9/14 |
| Sgt. W. Pickard | | 12-9-14 |
| Sgt. J. Childers | | 12-9-14 |
| Sgt. P. Spann | | 12-9-14 |
| Sgt. S. Ormond | | 12/10/14 |
| Sgt. T. Austin | | 12/9/14 |
| Inv. J. Battle | | 12-9-14 |
| Inv. T. Davis | | 12-9-14 |
| Inv. G. Walton | | 12/10/14 |
| Inv. E. Mills | | 12-9-14 |
| Inv. D. Lester | | 12-9-14 |
| Inv. S. Barr | | 12/9/14 |
| Inv. A. Nixon | | 12/10/14 |
| Inv. C. Johnson | | 12/9/2014 |
| Inv. A. Prince | | 12/11/2014 |
| Inv. C. Faircolth | | 12/9/14 |
| Inv. K. Chinyelu | | 12/9/14 |
| Spo G. Cone | | 12-9-14 |
| Off. N. Carr | | 12/9/14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-354

## Printed Matter Control Sheet

Division __OCOP__          Section __OPS__          Unit __ADV/IA/Integ__

Items distributed: __APD.SOP 3080 General Procedures__

| Employee's name | Employee's signature | Date |
|---|---|---|
| Off. B. Cruz | | 12/9/14 |
| Off. C. Mason | | 12/11/14 |
| Off. M. Stewart | | 12-9-14 |
| Sgt. R. Griffe | Robert B. Griffee | 12/10/14 |
| Inv. D. Haff | | 12/10/14 |
| K. Harmon | | 12/9/14 |
| V. Horton | | 12-9-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-355

**ATLANTA POLICE DEPARTMENT**

## Printed Matter Control Sheet

Division <u>OCOP</u>          Section <u>OPS</u>          Unit <u>ADV</u>

Items distributed: <u>APD. SOP .2011 General Conduct</u>

_____          Given by: _Sgt. W_____

_____

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. J.D. Webb | _Lt JD W___ | 12-12-1_ |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-356

## ATLANTA POLICE DEPARTMENT
### Printed Matter Control Sheet

Division __OCOP__          Section __OPS__          Unit __ADV__

Items distributed: __APD. SOP .3080 General Procedures__

Given by: _Sgt W L Lee_

| Employee's name | Employee's signature | Date |
| --- | --- | --- |
| Lt. J.D. Webb | _Lt J D Webb_ | 12-12-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-357

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

OCOP _____     Section  OPS _____

ems distributed: APD.SOP.2011 General Conduct _____     Unit  Adv. / IA / Integ.

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. J. D. Webb | _(signature)_ | |
| Lt. D. Ferguson | _(signature)_ | 12-4-14 |
| Lt. S. Bennett | _(signature)_ | 12-8-14 |
| Sgt. A. Lewis | _(signature)_ | 12-9-14 |
| Sgt. W. Dean | _(signature)_ | 12-9-14 |
| Sgt. W. Pickard | _(signature)_ | 12-9-14 |
| Sgt. J. Childers | Sgt. W. Pickard | 12-9-14 |
| Sgt. P. Spann | _(signature)_ | 12-9-14 |
| Sgt. S. Ormond | _(signature)_ | 12-9-14 |
| Sgt. T. Austin | _(signature)_ | 12/10/14 |
| Inv. J. Battle | _(signature)_ | 12-9-14 |
| Inv. T. Davis | _(signature)_ | 12/9/14 |
| Inv. G. Walton | Tracey Davis | 12/9/14 |
| Inv. E. Mills | Bentrell Walton | 12/10/14 |
| Inv. D. Lester | E. Mills | 12/9/14 |
| Inv. S. Barr | _(signature)_ | 12/9/14 |
| Inv. A. Nixon | Sarah K. Barr | 12/9/14 |
| Inv. C. Johnson | _(signature)_ | 12/9/14 |
| Inv. A. Prince | _(signature)_ | 12/9/14 |
| Inv. C. Faircloth | _(signature)_ | 12/10/14 |
| Inv. K. Chinyelu | _(signature)_ | 12/9/14 |
| SPO G. Cone | _(signature)_ | 12/9/14 |
| Off. N. Carr | for Carr | 12/8/14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-358

## Printed Matter Control Sheet

Division  SSP                    Section _____     Unit  SIU / PRAU

Items distributed: _____

APD.SOP.2011 General Conduct            APD.SOP.3080 General Procedures

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. Michael Ablan | | 12-9-14 |
| Lt. Richard Smythe | | 12/09/14 |
| Sgt. Marilyn Bighon | | 12/9/14 |
| Sgt. Anthony Stewart | | 12/9/14 |
| Sgt. Niya Mitchell | | 12/9/14 |
| Sgt. Angela Blue | | 12/10/14 |
| Officer David Clemons | | 12/9/14 |
| Officer Melody Dunn | | 12/9/14 |
| Officer Rudy Gomez | | 12/9/14 |
| Officer Jerome Jones | | 12/9/14 |
| Officer Miranda  Lee-Quinn, | | 12/9/14 |
| Officer Donald Reno | | 12/09/14 |
| Officer Clarence Tosh | | 12/9/14 |
| Officer Tabitha White | | 12/9/14 |
| Officer Wayne Bechtel | | 12/9/14 |
| Officer Donald Hannah (Nm) | | 12/8/14 |
| Officer Blossom Roberts | | 12/9/14 |
| Officer Angela Turner | | 12/9/14 |
| Officer Andrae Warren | | 12/9/14 |

Officer Leslie Okoka                                              12/9/14

⊗ Sgt. N. Mitchell Conducted (in) Call for P.P.A.U. ⊗

⊗ Sgt. M. Bighon Conducted roll call for SIU ⊗

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-359

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division __SSP__                Section __N/A__                Unit __TCAU__

Items distributed: __Review of APD.SOP 3080 & APD.SOP 2011__

General Procedures                           General Conduct

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. M. Oconnor | *Lt. M. Oconnor* | 12/9/14 |
| Sgt. D.Sheikh | *D. Sheikh* | 12-9-14 |
| SPO. L. Schuster | *L.C.Schuster* | 12-9-14 |
| SPO. J. Moses | *J. Moses* | 12-11-14 |
| Officer. R. Severance | *R. Severance* | 12-15-14 |
| Officer. C. Pennick | *C. Pennick* | 12-9-14 |
| Officer. N. Sime | *N. Sime* | 12-9-14 |
| Officer. K. Mitchell | *K. Mitchell* | 12-9-14 |
| Officer. D. Lopez | *D. Lopez* | 12-9-14 |
| Officer. J. Riley | *J. Riley* | 12-9-14 |
| Officer. L. Illery | *L. Illery* | 12-9-14 |
| K. Smith | *K. Smith* | 12/9/14 |
| T. Meadows | *Tamika Meadows* | 12-9-14 |
| S. Babcock | *S. Babcock* | 12-09-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-360

## ATLANTA POLICE DEPARTMENT
### Printed Matter Control Sheet

Division SSP                    Section N/A                    Unit TCAU

Items distributed: Review of APD.SOP 3080 & APD.SOP 2011

General Procedures                              General Conduct

| Employee's name | Employee's signature | Date |
|---|---|---|
| Lt. M. Oconnor | *[signature]* | 12/9/14 |
| Sgt. D.Sheikh | *[signature]* | 12-9-14 |
| SPO. L. Schuster | *[signature]* | 12-9-14 |
| SPO. J. Moses | *[signature]* | 12-11-14 |
| Officer. R. Severance | *[signature]* | 12-15-14 |
| Officer. C. Pennick | *[signature]* | 12-9-14 |
| Officer. N. Sime | *[signature]* | 12-9-14 |
| Officer. K. Mitchell | *[signature]* | 12-9-14 |
| Officer. D. Lopez | *[signature]* | 12-9-14 |
| Officer. J. Riley | *[signature]* | 12-9-14 |
| Officer. L. Illery | *[signature]* | 12-9-14 |
| K. Smith | *[signature]* | 12/9/14 |
| T. Meadows | *[signature]* | 12-9-14 |
| S. Babcock | *[signature]* | 12-09-14 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-361

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division  SSP                    Section  _____        Unit  Admin Office

Items distributed:  APD.SOP.2011 General Conduct

| Employee's name | Employee's signature | Date |
|---|---|---|
| Darlene Jackson | | 12/17/14 |
| Chanta'l Jackson | | 12-17-14 |
| Moe Ismail | | 12/17/14 |
| Yvonne Trammell | Yvonne Trammell | 12/17/14 |
| Kathy Terry | Kathy Terry | 12/17/14 |
| Patricia Freeman | | 12—17-14 |
| Jacqueline Wright | Jacqueline Wright | 12/17/14 |

This training was conducted by:
Sgt A. Blue

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-362

# ATLANTA POLICE DEPARTMENT
## Printed Matter Control Sheet

Division **SSP**          Section **PAU/Open Records**          Unit

Items distributed:

APD. SOP. 3080 General Procedures

APD. SOP. 2011 General Conduct

| Employee's name | Employee's signature | Date |
|---|---|---|
| Sgt G Lyon | | 12/11/14 |
| SPO R Stanionis | | 12/8/14 |
| Off K Y Jones | | 12.8.14 |
| Off J Stephens | | 12-11-14 |
| Off T Ashmon | | 12/8-14 |
| Off J Chafee | | 12-8-14 |
| Off T Ricks | | 12-15-14 |
| Off Y Goodson | | 12/11/14 |
| Off R Woolfolk | | 12-15-14 |

Sgt. G. Lyon Conducted the roll call training for APD SOP 3080 and 2011.

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-363

ATLANTA POLICE DEPARTMENT

# Printed Matter Control Sheet

Division **SSP** _____ Section _____ Unit **VIC** _____

Items distributed: **SOP 3080 and 2011**

General conduct _____                General Procedures _____

_____                          _____

| Employee's name | Employee's signature | Date |
|---|---|---|
| Sgt A. Carter | | 12-9-14 |
| Sgt M. Ellis | | 12-9-14 |
| Ofc. S Brown | | 12-9-14 |
| Ofc. T. Simmons-Griffim | | 12/9/14 |
| Ofc. C. Lockhart | | 12-9-14 |
| Ofc J. A. Mercado | | 12-9-14 |
| Ofc C. Schiffbauer | | 12-9-14 |
| Ofc A. Williams | | 12-9-14 |

Form APD 726  Formerly 32-O-3 ASD/CRU 027
Revised 2/19/03

ANDERSON-364